**James A. RUDISELL et al., Plaintiffs-Appellants,**

v.

**The FIFTH THIRD BANK, Defendant-Appellee.**

No. 77–3206.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1979.

Decided May 20, 1980.

Thomas F. Phalen, Gary M. Eby, Cincinnati, Ohio, for plaintiffs-appellants.

William R. Hardy, Stephen L. Black, Cincinnati, Ohio, for defendant-appellee.

Before CELEBREZZE, MERRITT and KENNEDY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Appellants, James and Jeanette Rudisell, sued appellee, Fifth Third Bank, for rescission of a home improvement contract for aluminum siding and accompanying promissory note and for statutory damages for violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (hereinafter, TILA). Appellee counterclaimed for judgment on the note. On cross-motions for summary judgment, the Magistrate made recommendations largely in favor of appellee, finding that appellee did violate TILA in one instance but that the damage claim was barred by the statute of limitations and

appellants had no right to rescind. Both sides filed exceptions. The District Court found for appellee on all claims. The Rudisells appealed.

The Rudisells contracted for installation of aluminum siding by Aluminum Wholesale Distributors, Inc. (hereinafter, A.W.D.) on or about December 5, 1972.[1] A.W.D. suggested financing through its bank, but appellants preferred to use one of the banks they used locally. A.W.D. then went to Fifth Third Bank and on December 7, 1972, Fifth Third agreed to extend credit to the Rudisells. A.W.D. returned to the Rudisells with the documents—a promissory note, which included the TILA disclosures, and a separate Notice of Right to Rescind.

Work commenced sometime in January 1973. Mr. Rudisell signed a completion certificate February 9, 1973, although appellants claim the work was not complete until February 12, 1973. A.W.D. assigned the promissory note to Fifth Third on February 9, 1973 and received payment from Fifth Third that same day. Later, appellants became dissatisfied with their siding. After unsuccessfully trying to contact A.W.D., they filed suit February 11, 1974. In August, 1974, they notified Fifth Third that they rescinded their contract. Upon motion by appellants, the District Court, by Order dated January 6, 1975, granted leave to appellants to amend the complaint to include a prayer for rescission.

Appellants claim multiple violations of TILA, viz.: failure to disclose the multiple creditors; failure to identify which creditor was responsible for each disclosure; failure to itemize each amount included in the finance charge; failure to describe the terms and amount of premiums of the credit life insurance; failure to disclose the cost of the credit report, the "unpaid balance of the cash price", the "unpaid balance", the method for calculating the amount due on default, and a definition of the "Rule of 78s"; failure to describe the security interest; and failure to make all disclosures on one side of one page. Because of these failures,

---

1. The contract is dated December 5, 1973. Appellants admit that the year is wrong, but do not remember the exact dates of contracting. Mrs. Rudisell insists the promissory note was not signed the same day as the contract for siding, even though the documents both say December 5, as the promissory note was not presented to them until a few days later.

appellants claim they are entitled to statutory damages and rescission of the contract.

Appellee claims no TILA violations occurred. Even if TILA was violated, they argue, appellants have no claim for relief because their right to damages is barred by the statutory limitations period and their right to rescission does not exist as no security interest was created in fact.

## I. RIGHT TO DAMAGES.

TILA provides, 15 U.S.C. § 1640, for statutory penalties equal to twice the finance charge if the creditor fails to disclose any information required under TILA. However, that right is subject to a one year limitations period which starts running "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

In *Wachtel v. West*, 476 F.2d 1062 (6th Cir.), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973), this Court was presented with a similar problem. There, plaintiffs borrowed money from the defendants, giving a second mortgage on their home as security. Plaintiffs later sued for damages and rescission, claiming TILA violations. Defendants moved for dismissal, asserting the one year limitations as a bar to plaintiffs' claim. The District Court granted the motion and this Court affirmed. The Act does not define "occurrence" of the violation, but TILA requires that disclosures be made "before the credit is extended". *See* 15 U.S.C. § 1639(b). Regulation Z, 12 C.F.R. § 226.1, *et seq.*, promulgated by the Federal Reserve Board under the authority granted in 15 U.S.C. § 1604, gives further guidance. Section 226.8(a) provides that the disclosures "shall be made before the transaction is consummated," which occurs "at the time a contractual relationship is created between a creditor and a customer or a lessor and lessee irrespective of the time of performance of either party," 12 C.F.R. § 226.2(kk). Since the "purpose of disclosure is clearly to give the borrower an opportunity to do some comparative shopping for credit terms", 476 F.2d at 1064, this Court held:

> a credit transaction which requires disclosures under the Act [TILA] is completed when the lender and borrower contract for the extension of credit. The disclosures must be made sometime before this event occurs. If the disclosures are not made, this violation of the Act occurs, at the latest, when the parties perform their contract.

476 F.2d at 1065. In *Wachtel*, the performance of the contract and the violation of the disclosure requirement took place the date the plaintiffs borrowed money and signed the second mortgage. *See also Harvey v. Housing Development Corp. & Information Center*, 451 F.Supp. 1198 (W.D.Mo.1978).

■ In the present case, one could argue appellee performed on either of two dates: December 7, 1972, the date appellee agreed to extend credit, or February 9, 1973, the date appellee paid A.W.D. for the assignment of the Note. Although Fifth Third did not actually pay any money until February 9, 1973, it was December 7, 1972 that it obligated itself to pay A.W.D. when the work was completed. The credit transaction was completed when the Rudisells signed the promissory note. Thus, the disclosures should have been given at least by the time the Rudisells signed the promissory note. Although the actual date of signing this promissory note is not clear,[2] it was signed sometime in December 1972. Thus, the statute ran in December 1973 and appellants' claim for damages, filed February 12, 1974, is barred by the statute of limitations. The District Court must be affirmed on this ground.[3]

## II. RIGHT TO RESCISSION.

■ TILA provides a right to rescind a transaction involving a security interest on the residence of the debtor until midnight of the third business day following the con-

---

2. *See* note 1 *supra*.

3. Appellants cite *Stevens v. Rock Springs National Bank*, 497 F.2d 307 (10th Cir. 1974), for the proposition that the one year statute of limitations runs on the later of the date of signing or the date of performance. However, that case does not compel a different result in the present case. There, two couples had filed complaints on April 13, 1973, alleging violations of TILA for failure to disclose in connection with the financing of mobile homes. The

summation of the transaction or the delivery of the disclosures required regarding the right to rescind and all other material disclosures, whichever is later. 15 U.S.C. § 1635.[4] If the disclosures are never made, the debtor has a continuing right to rescind.

couple which had arranged financing the day of sale, July 19, 1971, was time barred. The other couple had signed a purchase agreement April 4, 1972 but did not sign a promissory note until two weeks later. The court held that the second couple was not time barred—the limitations period started running from the time credit was extended, i. e., from the time the promissory note and security agreement were signed. 497 F.2d at 310. The court did not rely on the date the creditor actually paid money to either the couple or the seller of the mobile home. Here, appellants are time barred based on the date the promissory note was signed.

Nor does *Goldman v. First National Bank of Chicago*, 532 F.2d 10 (7th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976), compel a different result. There, the plaintiff had applied for a BankAmericard credit card from the defendant but did not use the card until several months after. Since he always paid his bill in full, he was not assessed a finance charge until almost a year after he received his card when his monthly payment arrived late. At that point, he perceived a discrepancy between the way the finance charge was calculated and the way the disclosure statement said it would be calculated. He sued, claiming a TILA violation. The defendant raised the statute of limitations as a bar and the District Court agreed. The Court of Appeals for the Seventh Circuit reversed, holding that the statute did not run until the first finance charge was imposed. However, the court's holding depended upon the unique and somewhat problematic nature of open-end credit arrangements where, unlike closed-end credit arrangements in which the finance charge may be determined from the time of the first payment, determination of TILA violation is only possible when the first finance charge appears, which may be many months after the customer receives and uses his card. The present case involves a closed-end credit arrangement and thus *Goldman* and its rationale are not applicable.

4. 15 U.S.C. § 1635. Right of rescission as to certain transactions—Disclosure of obligor's right to rescind

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

Return of money or property following rescission

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

\* \* \* \* \* \*

(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the disclosures required under this section or any other material disclosures required under this part have not been delivered to the obligor.

*See Sosa v. Fite*, 498 F.2d 114, 117–18 (5th Cir. 1974); *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 648 (9th Cir. 1974); *Pedro v. Pacific Plan of California*, 393 F.Supp. 315, 323 (N.D.Cal.1975). The right to rescind is not dependent upon the one year statute of limitations period for a claim for damages. *See Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133, 1136 (10th Cir. 1974).[5] Thus, appellants may have a right to rescind even though their claim for damages is barred by the statute of limitations in 15 U.S.C. § 1640(e).

Appellants claim that as the contractor had a right to a mechanic's lien under Ohio law, which is a security interest arising by operation of law and which was never disclosed, they had a continuing right to rescind even though the three day period for rescission has passed. Appellee argues that appellants do not have the right to rescind because no security interest was created in fact. Even if appellants had a right to rescind, appellee argues that appellants forfeited that right by not acting within the three day period as appellee disclosed all it had to disclose. Finally, appellee argues rescission should be denied because rescission is an equitable remedy and the appellants should not be allowed to keep their aluminum siding without paying for it as the appellee has already paid the contractor.

### A. Mechanic's Lien as a Security Interest.

The Magistrate recommended appellants be denied the right of rescission as TILA and Regulation Z gave such a right only when the situation involved a security interest in fact, not where a right to a security interest existed with only a mere possibility that the right would be asserted. Since no security interest was created by any of the financing agreements, appellants had no right to a security interest.

The District Court agreed with the Magistrate that the documents did not create a security interest. The court rejected appellants' argument that the contractor could have perfected a mechanic's lien and that this constituted a security interest. It held that the applicable regulation, ·12 C.F.R. § 226.2(gg), which defined·a security interest as including "other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens," implied a requirement that a mechanic's lien be recorded by the proximity of "whether or not recorded" to "consensual or confessed liens." The court also noted that under Ohio law a mechanic's lien was not effective prior to recording. Since the mechanic's lien was neither recorded nor created by the financing agreement, the District Court held it was not a security interest and thus appellants had no right to rescind.[6]

---

5. Indeed, in 1974, TILA was amended to add a three year limitations period for the right to rescind, notwithstanding that disclosures were never made. *See* P.L. 93–495, § 405, 88 Stat. 1517, 1519 (Oct. 28, 1974) (codified at 15 U.S.C. § 1635(f)).

6. The Magistrate applied TILA as it was amended effective Oct. 28, 1974 and the District Court adopted the Magistrate's findings. Since the cause of action arose February 11, 1973, before the effective date of the amendment, perhaps the amendments should not be applied. However, Congress intended the amendments to apply, even where the cause of action arose before the effective date of the amendments. The Act provided that the title amending TILA, save two amendments not material here, was to be effective upon the date of enactment. *See* P.L. 93–495, § 416, 88 Stat. 1517, 1521 (1974). A further exception was created for the amendments to the civil liability

section, which were to apply to determine the liability of any person unless prior to the date of enactment of the amendments that person's liability had been determined by final judgment of a court of competent jurisdiction and no further review of such judgment could be had by appeal or otherwise. *See* P.L. 93–495, § 408(e), 88 Stat. 1517, 1519 (1974). No such exception was created for not applying the amendments to the right to rescind. Since the amendments were viewed largely as "technical amendments", implying that the amendments merely codified existing regulations, *see* 120 Cong.Rec. 19214 (1974) (statement of . Sen. Proxmire); ·Conference Report No. 93–1429 (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News, pp. 6148, 6152, 120 Cong.Rec. 33989 (1974); 120 Cong.Rec. 34766 (statement of Rep. St. Germain); 120 Cong.Rec. 34768 (1974) (statement of Rep. Sullivan); 120 Cong.Rec. 34769 (statement of Rep. Kemp), there is no reason not to apply the amended version of

■ An unrecorded mechanic's lien is not outside the definition of a security interest solely because it was not created by the financing documents. The regulation includes in the definition of security interest "any lien on property arising by operation of law." *See* 12 C.F.R. § 226.2(gg).[7] The statute grants a right of rescission in any consumer credit transaction where "a security interest, including any such interest arising by operation of law, is or will be retained or acquired" in the real property to be used as the residence of the debtor. *See* 15 U.S.C. § 1635(a).[8]

■ Nor should the mechanic's lien be outside the definition of a security interest solely because it was not recorded. Neither the language of the statute nor the regulation requires that liens which arise by operation of law be recorded. The clause

"whether or not recorded" is intended to modify "consensual or confessed liens", as the District Court noted, but the absence of such a modifying phrase does not necessarily imply that liens which arise by operation of law must be recorded. Even if the liens did have to be recorded to be effective, the regulation cannot have contemplated a recording requirement: a lien like a mechanic's lien would not arise until the work was begun, but the work, by virtue of 12 C.F.R. § 226.9(c)(2), could not begin until the three day rescission period had passed—that is, not until three days after all disclosures were required to have been made. Thus, implying a recording requirement would nullify the requirement of disclosing any mechanic's lien or other lien which would arise by operation of law after the performance began.[9]

TILA. Other circuits have applied the amendments concerning civil liability for the first time to cases pending on appeal. *See Gerasta v. Hibernia National Bank*, 575 F.2d 580, 583–84 (5th Cir. 1978); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 875–76 (7th Cir. 1976); *Ives v. W. T. Grant Co.*, 522 F.2d 749, 758 (2d Cir. 1975).

7. 12 C.F.R. § 226.2(gg). "Security Interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

8. *See* note 4 *supra*.

9. A recording requirement is not necessarily inconsistent with the statute as the statute does not require all disclosures to be made before any physical changes are made in the property of the debtor. The statute only says that where a security interest, including those that arise by operation of law, is or will be retained in a debtor's residence, then the debtor has three days to rescind after consummation of the transaction or after the disclosures are made, whichever is later. Thus, under the literal language of the statute, ignoring the regulations, the statute could be interpreted to say that no

disclosures of an unrecorded mechanic's lien are required at the time the transaction is consummated, but that when a mechanic's lien is recorded, an additional disclosure must be made about the lien and the debtor must at that time be given three days to rescind.

However, such an interpretation would be inefficient and would not enable the consumer "to compare more readily the various credit terms available to him and avoid the uninformed use of credit", TILA's proclaimed purpose, *see* 15 U.S.C. § 1601, as the disclosure would come along after the debtor entered a credit relationship. Indeed, the right to rescind was substituted for an earlier proposal that disclosures be made three days before the consumer signed the credit contract in order to give the debtor an opportunity to reflect in the quiet of his home before signing an agreement which would create an encumbrance on his home. *See* 114 Cong.Rec. 1610–11 (1968) (amendments offered by Rep. Cahill and his accompanying statement). The three day waiting period was changed to a three day right to rescind while the bill was in conference. *See* Conference Report, H.R. 1397, 90th Cong., 2d Session (1968), *reprinted in* 114 Cong. Rec. 14375, 14382 (1968), [1968] U.S.Code Cong. & Admin.News, pp. 1962, 2021, 2023. Apparently, the Senate conferees did not want the creditor to have to come back to complete the transaction. *See* 114 Cong.Rec. 14398 (1968) (statement of Rep. Sullivan).

Thus, the regulation forbidding any work being done on the home before the rescission period expires, which necessarily implies a mechanic's lien must be disclosed before it can be recorded, is reasonably related to the purposes of the TILA. The Board's regulations are to be

There remains the question whether the mechanic's lien in this case is outside the definition of a security interest because no mechanic's lien was in fact recorded.

Under Ohio law at that time,[10] any person who performed labor or furnished materials for the alteration or repair of a building had a lien at the time the work was started. *See* Page's Ohio Rev.Code § 1311.01, 1311.02 (1962). The contractor was required to give notice to the owner or lessee of the building of the name and address of every laborer who had not been paid in full, *see* Ohio Rev.Code § 1311.04, but his failure to do so did not affect the lien rights of his laborers. *Id.; see J. G. Laird Lumber Co. v. Tietelbaum,* 14 Ohio St.2d 115, 236 N.E.2d 531 (1968). A person who wished to assert a materialman's lien or a mechanic's lien was required to record an affidavit and the failure to do so constituted a waiver of the lien rights, but the laborer had sixty days from the last date of performance to do so. *See* Ohio Rev.Code § 1311.06. A mechanic's lien then is a significant encumbrance upon a person's home and a customer would certainly be better informed about available credit if he knew about the possible mechanic's lien before he signed the contract.

The Federal Reserve Board, in unofficial opinion letters, has decided that the contingency of a mechanic's lien, *see* FRB Letter No. 1236 (Sept. 2, 1977), [1974–1977 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 31,-675, or the failure to later assert a lien arising by operation of state law, *see* F.T.C. Informal Staff Opinion Letter of August 5, 1969, [1969–1974 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 30,290, do not negate the customer's right to rescission.

■ The Board's letters, while not binding on the Court, represent an informed

opinion by the agency charged with implementing the TILA and should be treated as persuasive authority. *See Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437, 442 n. 13 (3rd Cir. 1977); *Ljepava v. M.L.S.C. Properties, Inc.,* 511 F.2d 935, 941 (9th Cir. 1975); *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 650 (9th Cir. 1974); *Harvey v. Housing Development Corp. & Information Center,* 451 F.Supp. 1198, 1206 (W.D.Mo.1978); *Sneed v. Beneficial Finance Co. of Hawaii,* 410 F.Supp. 1135, 1140 n. 7 (D.Hawaii 1976). "[D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive . . . ." *Ford Motor Credit Co. v. Milhollin,* —— U.S. ——, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

Although the legislative history indicates mainly a concern with homeowners being tricked into signing secondary mortgages, *see* 114 Cong.Rec. 1610–11 (1968) (statement of Rep. Cahill), it also indicates concern with liens. *See* 114 Cong.Rec. 114388 (statement of Rep. Sullivan) ("Any credit transaction which involves a security interest in property must be clearly explained to the consumer as involving a mortgage or lien"). Earlier the same year, the Senate held hearings on the very problem with which the Congressmen were concerned—that is, fraudulent practices used by home improvement contractors. *See* Hearings Before the Committee on Commerce, Senate, Serial 90–64, March 27, 28, 29, 1968 (Unfair Practices in the Home Improvement Industry & Amendments to the FTC Act). One of the problems mentioned during those hearings was where the homeowner paid the contractor, then discovered the subcontractor recorded a lien on the

given deference if the regulations are reasonably related to the purposes of the enabling legislation. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973); *N.C. Freed Co., Inc. v. F.R.S.,* 473 F.2d 1210, 1217 (2d Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973); *Gardner & North Roofing & Siding Corp. v. F.R.S.,* 464 F.2d 838, 841 (D.C. Cir.1972).

10. Ohio law now has a separate section providing that no laborer or materialman has a lien against the owner or lessee of a home for work done or materials supplied in connection with a home improvement contract unless the laborer or materialman files an affidavit of mechanic's lien before the owner or lessee has paid the original contractor. *See* Page's Ohio Rev.Code § 1311.011 (1979) (effective Jan. 1, 1978).

home, and had to pay twice. *See id.* at 42–43 (statement of Atty. Gen. John O'Connell), 75 (statement of Miss Furness); *N.C. Freed Co., Inc. v. F.R.S.*, 473 F.2d 1210, 1215 (2d Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973); *Gardner & North Roofing & Siding Corp. v. F.R.S.*, 464 F.2d 838, 841 (D.C.Cir.1972).

■ Since the FRB letters are a reasonable interpretation of the statute in light of the legislative history, this Court adopts their reasoning and holds that a possibility of a mechanic's lien is a security interest which must be disclosed even though the mechanic's lien may never be actually taken. *See Hobbs Lumber Co. v. Shidell*, 42 Ohio Misc.2d 21, 326 N.E.2d 706, Cons. Cred. Guide (CCH) ¶ 98,599 (Ohio Ct. Common Pleas 1974). *Cf. Starks v. Orleans Motors, Inc.*, 372 F.Supp. 928 (E.D.La.), *sum. affd.*, 500 F.2d 1182 (5th Cir. 1974) (vendor's privilege which arises by law when note is assigned from seller to bank is a security interest under TILA).

B. Disclosure of the Mechanic's Lien.

■ Thus, appellants had a right to rescind. However, they only have a right to rescind after the three day period has passed if the right to rescind was not disclosed or if other material disclosures were not made as required. The notice of right to rescind provided in this case copied what was required by the regulations. *See* 12 C.F.R. §§ 226.9(b) and (d). TILA, as amended in 1974, provides that a person cannot be held liable for a good faith compliance with the regulations. *See* 15 U.S.C. § 1640(f). Appellants must show a failure

to make a material disclosure to be able to rescind.

■ Appellants claim appellee failed to disclose the mechanic's lien. TILA, 15 U.S.C. § 1638(a)(10), requires disclosure of "A *description* of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates" (emphasis added). Regulation Z, 12 C.F.R. § 226.-8(b)(5), requires a "description or identification of the *type* of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit" be disclosed (emphasis added). The notice of the right to rescind merely states that the transaction "may result in a lien, mortgage, or other security interest on your home." The promissory note contains no reference to a security interest, although the contract for the aluminum siding states, "Seller is entitled to lien rights to the property shown as address of buyer unless otherwise specified." Nowhere do the papers hint that a mechanic's lien could arise by operation of law. Apart from a possible violation of the failure to make all material disclosures on the evidence of indebtedness or all on one side of one piece of paper, *see* 12 C.F.R. § 226.8(a), *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437 (3rd Cir. 1977); *Pedro v. Pacific Plan of California*, 393 F.Supp. 315 (N.D.Cal.1975), this Court finds that the disclosure was not adequate.[11] The creditor should at least disclose that a mechanic's lien may arise and cite the applicable provisions of the Ohio statutes.[12] The

---

11. *Ford Motor Credit Co. v. Milhollin*, —— U.S. ——, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), does not suggest a different result. There the Supreme Court held a creditor is not required to disclose an acceleration clause under TILA where the statutory language did not expressly require acceleration clauses be disclosed, but only required disclosure of default, delinquency, or similar charges. Further, the Board had interpreted the statute not to require disclosure of an acceleration clause.

12. *See Collinwood Shale, Brick & Supply Co. v. Binder*, 60 Ohio App.2d 91, 395 N.E.2d 907 (1978) (notice of right to rescind was not suffi-

cient disclosure for failure to disclose the possibility of materialman's lien). *Cf.* FC-0023, Official Staff Interpretation, Nov. 22, 1976 ("security interest under UCC" is a sufficient description); *Starks, supra*, (should have disclosed a statutory vendor's lien); the cases which hold a security interest in after-acquired property which does not describe the applicable ten day limitation from the UCC is not adequately described, *e. g.*, *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir. 1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977); *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815 (7th Cir. 1976); *Cadmus v. Commercial Credit Plan, Inc.*, 437

failure to disclose the security interest is material. Signing papers without knowledge of a security interest on the debtor's home was the very problem the rescission remedy sought to prevent. In the present case, appellants have a right to rescind because the mechanic's lien was not adequately disclosed.[13]

Appellee argues, however, that it did not have the duty to disclose the mechanic's lien because such a security interest would not run in favor of it. Therefore, although appellants may be able to rescind their contract with A.W.D., it argues, they should not be allowed to rescind against appellee.

The statute does not determine the effect if the creditor does not give credit directly to the debtor. The regulations provide some guidance. Section 226.6(d) of Regulation Z, 12 C.F.R. § 226.6(d), states:

(d) Multiple creditors or lessors; joint disclosure. If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8 or paragraph (b) of § 226.15.

Section 226.2(s) defines "creditor" as one who in the ordinary course of business regularly extends or arranges for the extension of consumer credit. "Arrange for the extension of credit" is defined in section 226.2(h):

(h) "Arrange for the extension of credit or for lease of personal property" means to provide or offer to provide consumer credit or a lease which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit or lease

(1) Receives or will receive a fee, compensation, or other consideration for such service, or

(2) Has knowledge of the credit or lease terms and participates in the preparation of the contract documents required in connection with the extension of credit or the lease. It does not include honoring a credit card or similar device where no finance charge is imposed at the time of that transaction.

In the present case, appellants did not go to the bank at all—A.W.D. helped them fill out their loan application, took the application to the bank, and brought back the Note for appellants to sign. Appellee did not loan its money to appellants in order that there be a cash sale by A.W.D.; A.W.D. contracted with appellants on condition that "Buyer agrees to execute a promissory note" and received payment from appellee when A.W.D. assigned the promissory note to appellee.

Had appellee loaned the money directly to appellants, and appellants then used the money for a cash sale from A.W.D., clearly A.W.D. would not have arranged or extended credit and would not have been a creditor. As Fifth Third Bank would have been the only creditor, a mechanic's lien, which would run in favor of A.W.D. and not Fifth Third, would not have run in favor of a *creditor*. There would have been no security interest in favor of a creditor to be disclosed and no right to rescind. *See* FRB Letter No. 1236, Sept. 2, 1977, [1974–1977 Transfer Binder] Cons. Cred. Guide (CCH)

F.Supp. 1018 (D.Del.1977); *Sneed v. Beneficial Finance Co. of Hawaii*, 410 F.Supp. 1135 (D.Hawaii 1976); *In re Dunne*, 407 F.Supp. 308 (D.R.I.1976); *Woods v. Beneficial Finance Corp. of Eugene*, 395 F.Supp. 9, 14 (D.Or.1975); *Johnson v. Associates Finance, Inc.*, 369 F.Supp. 1121 (S.D.Ill.1974).

13. Since this Court has found the failure to disclose the security interest is a material nondisclosure giving appellants a right to rescind, this Court need not discuss whether appellee failed to make other disclosures under TILA or whether those disclosures were material.

¶ 31,675; FC–0007, Official Staff Interpretation, Sept. 30, 1976 (12 C.F.R. Parts 20–299, at 595 (1979)); FRB Letter No. 178 (Nov. 18, 1969), [1969–1974 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 30,213; FRB Letter of July 16, 1969, [1969–1974 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 30,096.

However, this case does not involve a direct loan to a consumer. Here, A.W.D. signed a contract with appellants which clearly indicated appellants were deferring payment and were incurring a finance charge. Appellants agreed in this contract to execute a promissory note, which was later assigned to appellee. The Federal Reserve Board has distinguished this situation from the situation involving a direct loan to a consumer—where the contractor arranges for the credit or extends credit and later assigns the note to a bank, both the contractor and the bank are creditors and a possible mechanic's lien on the residence of the debtor gives rise to the right of rescission. *See* FRB Letter No. 1236 (Sept. 2, 1977), [1974–1977 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 31,675; FRB Letter No. 388 (Aug. 4, 1970), [1969–1974 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 30,569; FRB Letter No. 178 (Nov. 18, 1969), [1969–1974 Transfer Binder] Cons. Cred. Guide (CCh) ¶ 30,213.

█ Although merely helping the debtor fill out the forms may not be enough to make one an arranger of credit under TILA, *see Gerasta v. Hibernia National Bank*, 411 F.Supp. 176, 186 (E.D.La.1976), *aff'd in part, rev'd in part on other grounds*, 575 F.2d 580 (5th Cir. 1978), A.W.D. did more. It agreed to allow appellants to defer payment. Thus, A.W.D. was a creditor and the mechanic's lien which would arise by operation of law is one in favor of a creditor. *Cf. Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 874 n. 1 (7th Cir. 1976) (both dealer and GMAC are creditors where GMAC financed car and dealer was required to use GMAC's forms). Since the mechanic's lien is a security interest in debtor's home, TILA provides appellants with a right to rescind until three days after all material disclosures are made. Since the mechanic's lien was never disclosed, appellants presently have a right to rescind their transaction.

The provision of the regulations dealing with multiple creditor's disclosure obligations, 12 C.F.R. 226.6(d), does not help appellee. While appellee may not be liable for statutory penalties for failure to disclose the security interest, that being the obligation of the seller under this regulation, *see Manning v. Princeton Consumer Discount Co., Inc.*, 533 F.2d 102, 105 (3rd Cir. 1976); *Jennings v. Edwards*, 454 F.Supp. 770, 773–76 (M.D.N.C.1978), *sum. aff'd*, 598 F.2d 614 (4th Cir. 1979); FRB Letter No. 1236 (Sept. 2, 1977), [1974–1977 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 31,675; FRB Letter No. 388 (Aug. 4, 1970), [1969–1974 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 30,569, the appellants still have a right to rescind the transaction. Congress intended the rescission to absolutely void the transaction and return the debtor to the status quo existing before he started the transaction, even against third party purchasers. *See* 114 Cong.Rec. 14388 (1968) (statement of Rep. Sullivan).

## C. Effect of Rescission.

The statute provides that if the debtor rescinds, the creditor is to return within ten days to the debtor any down payment or other monies it received from the debtor and to cancel its security interest. Upon doing that, the debtor is then to return to the creditor any property he received from the creditor. If the debtor tenders, but the creditor does not take possession of his property, the debtor is allowed to keep the property. 15 U.S.C. § 1635(b).[14]

In this case, appellants rescinded, but appellee did not do anything within ten days. The statute does not say what should happen if the creditor does not tender back the property within ten days as required under the statute due to a good faith belief that the debtor has no right to rescind.

**14.** *See* note 4 *supra*.

Appellants argue that they should be allowed to rescind, receive back all monies paid to appellee, and keep the aluminum siding without paying for it, citing *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974). However, that case is distinguishable. There, the debtor offered to tender the reasonable value of property received at the time of rescission.

■■■■ The statute clearly does not require the debtor to tender first. *See Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 944 (9th Cir. 1975); *Palmer v. Wilson*, 502 F.2d 860, 861 (9th Cir. 1974). It contemplates the creditor tendering first. But upon the creditor fulfilling its obligations under the statute, the debtor then must tender. *Gerasta v. Hibernia National Bank*, 575 F.2d 580, 584 (5th Cir. 1978); *Mitchell v. Security Investment Corp. of Palm Beaches*, 464 F.Supp. 650 (S.D.Fla.1979). Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor. *See Powers v. Sims & Levin*, 542 F.2d 1216, 1220–22 (4th Cir. 1976); *LaGrone v. Johnson*, 534 F.2d 1360, 1361–62 (9th Cir. 1976); *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir. 1974).

■■ In the present case, appellants received aluminum siding. Appellee paid in full for this service, which appellants now claim is unsatisfactory. Appellee prepared all the disclosure forms, including the notice of the right to rescind. The loan application is clearly headed "Property Improvement Loan Application". Appellee should have been aware that a mechanic's lien might arise in appellants' home. Indeed, appellee furnished the notice of the right to rescind. Appellee thus could have disclosed the statutory lien on its form, but this was not done. Since Congress clearly intended to give a right to rescind to persons in appellants' situation, this Court feels it must grant them that right. However, since appellants have kept the aluminum siding, this Court feels that appellants should tender the reasonable value of the property they received since they cannot give back what they actually received, that is, the aluminum siding. The rescission and return of monies paid to appellee is thus conditioned upon the return to appellee by appellants the reasonable value of the property received. In this way, the Court will most nearly put the appellants in the position they were in before they entered the transaction.

The District Court is reversed on appellants' claim for rescission and the case is remanded to determine the reasonable value of the aluminum siding received.

The District Court on remand should order Fifth Third Bank to pay back to James and Jeanette Rudisell all monies received from them, such payment to be conditioned upon James and Jeanette Rudisell paying to, Fifth Third Bank the reasonable value of the aluminum siding received.

IT IS SO ORDERED.