**In re Robert Lee BAYLESS and
Camellia Ann Bayless,
Debtors.**

No. 02–33987.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 9, 2005.

Roxane M. Kaye, UAW–Legal Services Plan, Lead Attorney, Flint, MI, for Debtors.

*SUPPLEMENTAL OPINION RE-
GARDING CLAIM OF BLUE
VIEW CORPORATION*

WALTER SHAPERO, Bankruptcy
Judge.

*Facts*

On April 10, 1995, Debtors entered into
a home improvement contract with Para-
mount Improvements, Inc., for installation
of new windows, a roof and siding for their
home. Paramount completed the work
sometime in July 1995. Conseco/Green-
tree Financial Services (or some predeces-
sor in interest) apparently by referral from
Paramount provided financing for the
transaction in the sense that they loaned
to Debtors the sums necessary to pay Par-
amount in full upon completion of the work
and took the residence property as mort-
gage collateral for repayment of the loan
over time. Debtors thereafter commenced
making payments on that loan. By letter
dated January 29, 1997, from Debtors' at-
torney to Paramount (Debtors' Exhibit 1),
Debtors cancelled the contract with Para-
mount (Debtors' Exhibit 4). About that
same time, Debtors discontinued making
any payments to Conseco/Greentree Fi-
nancial Services on the loan. Pursuant to
an Assignment of Deed of Trust/Mortgage
recorded on June 26, 2002, Blue View Cor-
poration ("Blue View") became the succes-
sor in interest to Conseco/Greentree Fi-
nancial Services.

Debtors filed this Chapter 13 case on
November 19, 2002. In their schedules,
Debtors list Blue View as a secured credi-
tor for purposes of "Notice Only." In their
First Amended Chapter 13 Plan, Section
3(B), Debtors list Blue View as a secured
second mortgagee and propose to pay
$213.16 monthly to Blue View in satisfac-
tion of its claim. Debtors further state
that this claim is in arrears in that amount
of $18,000.00, with 0% interest to be paid.
The plan contains no other provision with

regard to the debt owed to Blue View. On
December 2, 2002, Blue View filed a proof
of claim in the amount of $38,097.30, which
stated that this claim is secured by "real
estate."

Debtors' First Amended Plan was con-
firmed on June 19, 2003, which Order con-
tained the following provision:

> Trustee shall not pay blue view claim
> until court order determine [sic] status
> of claim and creditor.

Debtors also objected to the claim of Blue
View. An evidentiary hearing was thereaf-
ter held and concluded, and both parties
have submitted post-hearing briefs on the
legal issues involved.

At the evidentiary hearing, Mr. Bayless
was the only witness. Mr. Bayless testi-
fied that while in a hardware store, he was
approached by an individual and asked if
he owned a home. The individual asked
for Mr. Bayless's phone number, which
Mr. Bayless gave to him. It is unclear if
the type of work needed was discussed at
the hardware store. Sometime thereafter,
a representative of Paramount called Mr.
Bayless at home and asked if he could
come to the Bayless home regarding win-
dow installation. Mr. Bayless agreed to
an appointment, and the Paramount repre-
sentative came to the Bayless home at the
agreed date and time. At the appoint-
ment, Paramount's representative made
suggestions to Mr. Bayless regarding win-
dows and other work to be done on the
home. Paramount's representative also
came to the Bayless home a second time.
Eventually, on April 10, 1995, Mr. Bayless
signed three separate agreements (Debt-
ors' Exhibit 2) for work to be performed
by Paramount for full installation of new
windows, siding, and roofing, along with
work to be performed ancillary to these
projects. Mr. Bayless testified that
around this time, Paramount sent another

representative from a bank to his home to discuss financing for these improvements. Mr. Bayless then signed papers to obtain the required financing for completion of these projects in the total amount of $17,993. He further testified that he never received a notice of his right to cancel, and despite his later cancellation of the contract in January 1997, he has never received any payments back from Paramount. Mr. Bayless recalls that the work was completed by Paramount on July 27, 1995, and that he was satisfied with the quality of the work done, but was unable to continue making payments under the contract due to financial difficulties he and his wife were experiencing.

### Parties' Arguments

Debtors argue that under the Michigan Home Solicitation Sales Act, M.C.L.A. § 445.111 *et seq.* ("MHSSA"), their contract with Blue View should be considered rescinded and Blue View's claim should be disallowed. Debtors contend that because Paramount did not provide Debtors with the prescribed form of cancellation notice permitting the buyer to cancel within three days as required by MHSSA § 445.113, and because MHSSA § 445.112(1) provides that a buyer may cancel a sale under this Act at any time before the third business day after the day on which the buyer signs such an agreement, Debtors' letter and cancellation notice of January 29, 1997, was timely and the contract was effectively cancelled under the MHSSA on that date. Further, Debtors argue that because Blue View did not make a demand for return of the goods within twenty days of the January 29, 1997, notice of cancellation, under MHSSA § 445.115(1), any goods delivered by Paramount are now the property of the Debtors.[1] Debtors acknowledge that MHSSA § 445.114 also requires that Paramount was obligated to return "any payments made by the buyer and any note or other evidence of indebtedness." within ten days of their January 29th cancellation; however, Debtors have not demanded return of any payments made, but only seek cancellation of the debt owing to, and lien held by, Blue View.

Blue View raises several arguments in defense of its claim. First, Blue View argues that the MHSSA does not apply to the transaction at issue because what occurred between Debtors and Paramount was not a "home solicitation sale" under the MHSSA § 445.111. It is Blue View's position that the original solicitation occurred at a hardware store, not Debtors' residence. Blue View thus argues that because MHSSA § 445.111(a) requires that a "home solicitation sale" be a "personal, telephonic, or written solicitation of the sale ... received by the buyer *at a residence of the buyer*", (emphasis added), this transaction is outside the scope of the MHSSA. Second, Blue View argues that, even if the MHSSA does apply, the sending of the cancellation notice on the form with Paramount's name on it proves Debtors did receive it from Paramount. Third, once again assuming the MHSSA applies, Blue View argues that it is entitled to

---

1. MHSSA § 445.115(1) states:

Except as provided by section [445.114(3)], if a home solicitation sale has been canceled or an offer to purchase revoked, a seller may demand the return of goods delivered within 20 days after the cancellation or revocation. The buyer shall take good care of the goods and shall make the goods available for return to the seller at the buyer's residence. If the seller fails to demand return of the goods as prescribed in this subsection, the goods shall become the property .of the buyer without obligation. However, subsection (2) provides that a seller is not entitled to any compensation for services rendered under the MHSSA prior to cancellation.

equitable relief on a quantum meruit theory, the equities of the situation being that Debtors were satisfied with the work done by Paramount, accepted and have enjoyed the benefits of such work, and Debtors' present objection now constitutes bad faith, which is a basis to deny their objection despite any technical, unintentional infirmities under the MHSSA.

### Analysis

This Opinion is limited to disposition of the issues as raised and argued by Debtors and Blue View, and does not address potentially dispositive issues which might have been raised by the parties.

### I. *"Home solicitation sale" under MHSSA*

■ If a transaction amounts to a "home solicitation sale," the buyer is afforded certain protections, one being his right to cancel the transaction within three business days. If a buyer elects to cancel the home solicitation sale transaction, the buyer is entitled to return of any payments made and cancellation of any security interest arising out of the transaction. M.C.L.A. § 445.113(2).

The first issue raised by Blue View is that the transaction at issue does not amount to a home solicitation sale. MHSSA § 445.111(a) provides:

"Home solicitation sale" means a sale of goods or services of more than $25.00 in which the seller or a person acting for the seller engages in a personal, telephonic, or written solicitation of the sale, the solicitation is received by the buyer at a residence of the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller.

MHSSA § 445.111(a) further provides a list of types of sales, which are not "home solicitation sales." Among those excep-

tions, subsection (a)(ii) is arguably applicable to this situation. This subsection provides that a "home solicitation sale does not include . . . the following":

(ii) A sale made pursuant to prior negotiations between the parties at a business establishment at a fixed location where goods or services are offered or exhibited for sale.

A "fixed location" is defined in subsection (b) as:

a place of business where the seller or an agent, servant, employee, or solicitor of that seller primarily engages in the sale of goods or services of the same kind as would be sold at the residence of a buyer.

Blue View argues that because Mr. Bayless's initial contact with the Paramount representative occurred at a hardware store, and not Debtors' residence, the transaction at issue does not constitute a "home solicitation sale", therefore making the MHSSA inapplicable.

■ The Court disagrees with Blue View. Making an initial contact is not the equivalent of soliciting a sale. Because the Court finds MHSSA § 445.111 unambiguous, and because the word "solicitation" is not otherwise defined in the statute, the Court must enforce the statute as written and must give it its plain meaning. *People v. Stone*, 463 Mich. 558, 562, 621 N.W.2d 702 (2001). Black's Law Dictionary defines "solicitation" as, "[t]he act or an instance of requesting or seeking to obtain something; a request or petition." *Black's Law Dictionary* (8th ed.2004). Mr. Bayless testified, and Blue View does not dispute, the conversation that took place at the hardware store was nothing more that general discussions regarding Debtors' interest in new windows, and Mr. Bayless then gave the Paramount representative his home telephone number for a home

visit. Although the initial contact between Mr. Bayless and Paramount was made at a place other than Debtors' residence, the "solicitation," i.e., sales pitch, was received by Mr. Bayless at his residence. This Court concludes that "solicitation" in the context of this particular statute implicates serious meaningful discussions about the subject matter of the agreement and something more than just being referred to, or being given the name of, the contractor for later possible discussions which might or might not lead to an agreement. To agree with Blue View on this point would be to agree that initial contacts are the equivalent of negotiations leading to an agreement, which would be inconsistent with the statute's clear language, as well as impractical and unreasonable. The fact that the resulting contract was not only for windows, but also for new siding and a new roof, further bolsters the conclusion that the "solicitation" the MHSSA was designed to protect occurred at Debtors' residence, and given what appears to be the remedial intent of this statute, it ought to be construed in favor of those whom it was designed to protect.

Nor does subsection (a)(ii) of MHSSA § 445.111 apply as an exception for the above reasons. There were no "prior negotiations" at the hardware store here; rather, only the exchange of contact information between Mr. Bayless and Paramount's representative resulted from any communications made outside of Debtors' residence. It is also questionable whether the second part of subsection (a)(ii) is satisfied, as Blue View has not demonstrated that the hardware store in question was a "business establishment at a fixed location where goods or services are offered or exhibited for sale."

The Court's conclusion is consistent with applicable Michigan law on the subject. In the case of *Brown v. Jacob*, 439 Mich. 865, 476 N.W.2d 156 (1991), the Michigan Supreme Court rendered a decision on the scope of applicability of the MHSSA, reversing a decision of the Michigan Court of Appeals. The Michigan Supreme Court in *Brown*, reversed the Michigan Court of Appeals (*Brown v. Jacob*, 183 Mich.App. 387, 454 N.W.2d 226 (1990)) for the reasons expressed in the dissenting opinion of Michigan Court of Appeals Judge Richard Allen Griffin, in holding that a contractor's sale of non-emergency home repairs was not a "home solicitation sale" under the MHSSA. Judge Griffin reasoned that because the contract in that case was the result of a telephone call initiated by the consumer to the business owner made at the business establishment without any prior solicitation by the business owner, the contact was "wholly consumer initiated," and, thus, the MHSSA was inapplicable. Judge Griffin stated:

> The instant situation is not the type of transaction that the Michigan HSSA was designed to regulate. The legislative histories of these statutes indicate that their purpose was to protect consumers from intrusions into their homes by door-to-door and telephone solicitors. In those circumstances, the consumer has not yet prepared himself or herself for the negotiation process or braced himself or herself for the possibility of high pressure sales tactics. The consumer is therefore in a uniquely vulnerable position and is susceptible to an unwanted sale of consumer goods. The home solicitation sales act serves to protect the consumer from such vulnerabilities.

*Brown*, 183 Mich.App. at 395, 454 N.W.2d 226. Similarly, in following the Michigan Supreme Court's adoption of Judge Griffin's reasoning in *Brown*, the Michigan Court of Appeals, in *Patrick v. U.S. Tangible Investment Corp.*, 234 Mich.App. 541, 595 N.W.2d 162 (1999), held that the

MHSSA was inapplicable to a meeting in the consumer plaintiffs' home with a coin dealer, when: (1) the meeting took place in response to the consumers' inquiries; and (2) the sale itself took place subsequent to the initial meeting after negotiations continued between the parties through telephone and facsimile. *Id.* at 547–48, 595 N.W.2d 162. In reaching this conclusion, the *Patrick* Court stated:

> The fact that plaintiffs did not assent to the purchase agreements until *after* defendant's agent left plaintiffs' home and returned to Texas indicates to this Court that plaintiffs were not the vulnerable consumers that this act was created to protect. Because the purchase agreement was not *there given* at the place of the sales presentation, the transaction is outside the scope of the act.[2]

*Id.* at 548, 595 N.W.2d 162 (emphasis in the original).

This present case involves neither the level of "prior negotiations" between Mr. Bayless and Paramount, nor the lack of vulnerability found to exist by the courts in the *Brown* and *Patrick* cases. The discussion in the hardware store went no further than the cursory exchange regarding window replacement and the relay of contact information. The "spirit and purposes" of the MHSSA is thus preserved by this Court's finding that the transaction at issue here is within the scope of the MHSSA.

II. *Whether Debtors Received "Notice of Cancellation" Form*

■ Blue View also argues that Debtors must have received the "Notice of Cancellation" required by MHSSA § 445.113 in this case because the notice of cancellation admitted as Debtors' Exhibit 4 at the hearing contained Paramount's name and address on what appeared to Blue View to be a pre-printed form. Blue View argues that this appearance on the face of the form somehow implies that when Debtors did cancel the contract in January 1997, Debtors did so on the form that was given to them initially, which Blue View contends was in compliance with the MHSSA requirements. Blue View's argument on this point is nothing more than that. Mr. Bayless credibly testified that he never received the notice of cancellation form from Paramount, and Blue View did not dispute, nor attempt to dispute, this testimony through cross-examination or otherwise. The Court thus concludes that Debtors have met their burden of proof on the fact that they never received the required notice of cancellation from Paramount.

III. *Remedies Available to Debtors Under the MHSSA*

■ Blue View further argues that even if the MHSSA is applicable, its claim should not be disallowed based upon the equities of this case. The Court is cognizant that under the MHSSA, Blue View, or its predecessor, would have had the right to "demand the return of goods delivered within 20 days after the cancellation or revocation," and upon the seller's failure to so demand, "the goods shall become the property of the buyer without obligation." M.C.L.A. § 445.115(1). Additionally, the seller is not entitled to compensation for any services performed. M.C.L.A. § 445.115(2). It is undisputed that Blue View did not make a demand pursuant to

---

**2.** The *Patrick* Court analyzed MHSSA § 445.111(a) in place at the time, which required that the solicitation be "at a residence of the buyer," whereas the current version of this subsection, as enacted in 1998, states that the solicitation "is received by the buyer at a residence of the buyer." This amendment would appear to offer a clarification and no substantive change to the analysis in this case.

418

Section 445.115 of the MHSSA; thus, without considering the equities of the situation, Debtors are entitled to retain the "goods", i.e., the windows, siding and roof, and not obligated to compensate Blue View for any services performed.

Debtors clearly have enjoyed significant improvements to their home-new windows, siding and a roof-for some ten years without at least indirectly paying most of the $17,993 originally contracted for. In fact, Debtors stopped paying on the contract approximately 18 months later, and in their First Amended Chapter 13 Plan, Debtors conceded they owed at least $18,000 in arrears to Blue View, Debtor's counsel having argued (there being no testimony on this point) that only about $4,000 was paid by Debtors on this debt.

The Court concludes that to allow Debtors to retain these improvements without paying the amount owed to Blue View would be an inequitable and uncalled for result. This conclusion is supported by the law of this Circuit. In the case of *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir.1980), the Sixth Circuit Court of Appeals held that even though borrower/homeowner would be allowed to rescind home improvement contract for new siding due to lender's violation of the Truth in Lending Act requirement of disclosure of possibility of mechanic's lien arising as a result of contract, a court could nevertheless condition rescission on the borrower paying the reasonable value of the siding. In its holding, the Sixth Circuit stated:

> Since Congress clearly intended to give a right to rescind to persons in appellants' situation, this Court feels it must grant them that right. However, since appellants have kept the aluminum siding, this Court feels that appellants should tender the reasonable value of the property they received since they cannot give back what they actually received, that is, the aluminum siding. The rescission and return of monies paid to appellee is thus conditioned upon the return to appellee by appellants the reasonable value of the property received. In this way, the Court will most nearly put the appellants in the position they were in before they entered the transaction.

*Rudisell*, 622 F.2d at 254; *see also Reynolds v. D & N Bank*, 792 F.Supp. 1035, 1039–40 (E.D.Mich.1992) (citing *Rudisell*, and holding that while rescission of the contract was warranted for lender's violation of applicable provisions of both the Truth in Lending Act and the MHSSA in installment contract to finance home window installation project, principles of equity required borrower must pay reasonable value of the windows to lender). The lender is to be essentially seen and dealt with as standing in the shoes of Paramount.

■ Like the above cases, the remedy sought by Debtors here is rescission for a lender's failure to comply with laws aimed at protecting borrowers in credit sales transactions. Rescission is an equitable remedy. While rescission may be appropriate under the above-cited provisions of the MHSSA, the Court also holds that a corresponding condition to rescission must be payment to Blue View of the fair value of the improvements received.[3] Even if Blue View were to have timely demanded return of the "goods", it would have been impractical to remove roofing, siding and windows-items which became for all prac-

---

**3.** The fact that Debtors did not cancel the contract until 21 months after it was signed and 18 months after the work was satisfacto- rily completed do not tip the scales of equity in Debtors' favor.

tical purposes permanently affixed to the home.

Mr. Bayless testified that he was satisfied with the work performed; thus, Blue View should receive the fair value of those improvements. Fair value in this situation, the Court concludes, is the agreed contract price of $17,855 ($17,955, less the $100 down payment made).[4]

*Conclusion*

For the foregoing reasons, Debtors' objection to the claim of Blue View is denied, and Blue View's claim shall be allowed in the amount of $17,855, which shall be considered a secured claim, and payment of such to Blue View shall be a condition to Debtors' retention of the improvements made. An appropriate order shall be prepared and presented by Blue View.

---

4. Blue View is not entitled to what this Court characterizes as additional, incidental charges. Blue View's total claim is $38,097.30, its proof of claim indicating this amount is comprised of a principal balance of $17,963; interest arrears through November 19, 2002 of $15,999.54; late fees of $810.16; a "BPO" charge of $1,134.60; and "Foreclosure/Attorney Fees" of $2,190.00.