**Margie COX, Plaintiff-Appellant,**

v.

**FIRST NATIONAL BANK OF CINCINNATI, Defendant-Appellee.**

No. 83–3834.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1984.

Decided Jan. 2, 1985.

Frank J. Wassermann (argued), Legal Aid Society of Cincinnati, Cincinnati, Ohio, for plaintiff-appellant.

Paul J. Vesper, Covington, Ky., for defendant-appellee.

Before CONTIE, Circuit Judge, PHILLIPS, Senior Circuit Judge, and GILMORE, District Judge.[*]

CONTIE, Circuit Judge.

Plaintiff Margie Cox appeals the district court's grant of summary judgment in favor of Defendant First National Bank of Cincinnati in this Truth in Lending Act case. We reverse and remand to the district court because it applied the wrong law.

The general problem in this case is whether the Truth in Lending Act as it existed before Congress amended it in 1980, with the Truth in Lending Simplification and Reform Act, *see* Truth in Lending Simplification and Reform Act, Pub.L. No. 96–221, 94 Stat. 168 (1980), or the Act as amended or selected provisions of both the amended and unamended Acts must govern this case. Similarly, it must be determined which interpretive regulation, the one commonly known as Regulation Z or the one known as Revised Regulation Z, is to be applied. The problem occurs because Congress, when amending the Act in 1980, provided that creditors could choose to comply with the amended Act, rather than the presimplification Act, prior to the effec-

[*] The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

tive date of the amendments. A period of alternative compliance was thus created. The disclosures which underlie this case occurred during this transitional period.

## I.

In October 1981 Cox entered into a contract with Cincinnati Home Insulation in which Home Insulation undertook to perform certain improvements on Cox's residence. The cost of the goods and services to be supplied by Home Insulation was financed by that company. The total cost, excluding finance charges, was $4,500. Cox alleges that she made a $400 downpayment, but the contract and accompanying disclosure statement did not mention any downpayment and provided that the entire bill, $4,500, was to be financed. Home Insulation obtained a second mortgage on the residence and the contract provided for a waiver of Cox's homestead exemption.[1] The statement disclosed that Cox's residence might become subject to "construction liens."[2] At some later date, Home Insulation assigned the contract and mortgage to First National Bank of Cincinnati.

On July 12, 1982 Cox sent First National formal notice of her desire to rescind the contract, a remedy available for certain violations of the Truth in Lending Act. On July 16, 1982 Cox filed the instant action. Her complaint alleged three violations of the Act: the failure to disclose the downpayment, the failure to disclose properly a security interest created by the waiver of Cox's homestead exemption and the failure to disclose properly and fully possible security interests in the nature of mechanics' and materialmen's liens. Cox subsequently filed a supplemental complaint under Federal Rule of Civil Procedure 15(d) to add a claim for wrongful failure to allow rescission.

■ Cox sought the following relief. Under the presimplification version of 15 U.S.C. § 1640, a successful plaintiff could receive statutory damages equal to twice the finance charge, but not less than $100 nor greater than $1,000, for "any" violation of the relevant portions of the Act. *See* Truth in Lending Act, Pub.L. No. 90–321, § 130, 82 Stat. 146, 157 (1968), *amended by* Pub.L. No. 93–495, § 408(a), 88 Stat. 1500, 1518 (1974), *amended by* Pub.L. No. 94–240, § 4, 90 Stat. 257, 260 (1976) (current version at 15 U.S.C. § 1640(a)(2)).[3] Cox sought to impose this statutory liability. Cox also sought rescission, which, under both the presimplification and current version of 15 U.S.C. § 1635, is available in any transaction in which a security interest is retained in the consumer's residence. The right of rescission must be exercised within three days of the later of the consummation of the transaction or the delivery of all "material disclosures" and notice of the consumer's right to rescind. *See* 15 U.S.C. § 1635(a); Truth in Lending Act, Pub.L. No. 90–321, § 125, 82 Stat. 146, 153 (1968), *amended by* Pub.L. No. 93–495, § 404, 88 Stat. 1500, 1517 (1974). When there is a failure to make all material disclosures, the consumer has a continuing right of rescission which does not lapse until the residence is sold or three years have elapsed from the consummation of the transaction, whichever is earlier. *See id., added by* Pub.L. No. 93–495, § 405, 88 Stat. 1500, 1517 (1974) (current version at 15 U.S.C. § 1635(f)). Finally, Cox sought costs and attorneys' fees. *See* 15 U.S.C. § 1640(a)(3); Truth in Lending Act, Pub.L. No. 90–321, § 130, 82 Stat. 146, 157 (1968).

---

1. This provision of the contract provided:
   Buyer hereby waives presentment, demand for payment, protest, notice of protest, notice of non-payment and all exemptions, whether homestead or otherwise, and all rights to a judicial or other hearing as to possible seizure or repossession of Buyer's property securing this contract and obligation, to which Buyer may now or hereafter be entitled under the laws of Ohio or any other state.

2. The disclosure statement and contract provided that "[t]he aforesaid real property may also be subject to construction liens under Ohio or other applicable state law."

3. The current version of the Act provides that statutory liability is available only for specified nondisclosures. *See* 15 U.S.C. § 1640(a).

In determining whether the presimplification or current Act applied, the district court relied on a stipulation which provided that Cox's "contract is subject to the federal Truth-In-Lending Act, 15 U.S.C. § 1601 et. seq. and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.01 et seq." The court held that "[c]learly, under this stipulation, the provisions of TILA, not TILSRA, govern the Court's decision." [4] The district court also relied on the fact that the current version of the Act was not effective "until approximately one year after the transaction herein." [5] The district court also held, however, that the stipulation did not clearly resolve whether Regulation Z or Revised Regulation Z was to apply. It therefore held that,

> conduct that conforms with the requirements of either Regulation Z or Revised Regulation Z is acceptable. It would be anomalous to find that defendant violated TILA when its conduct in fact conformed to at least one set of regulations in effect thereunder. As long as defendant can point to one or more subsections of Regulation Z, old or new, under which its actions are proper, it will not be held liable.

The district court then proceeded to dismiss Cox's claims in reliance on the presimplification Act, Regulation Z and Revised Regulation Z. On the downpayment issue, the court held that Cox could receive no damages because the presimplification Act provided that an assignee is liable only for violations which are "apparent on the fact of the instrument assigned." [6] The district court did not clearly explain why a failure to disclose a downpayment does not give right to a continuing power to rescind.

Rather, it merely stated that "a failure to disclose a downpayment is not among the circumstances giving rise to a right of rescission. *See* 15 U.S.C. § 1635(a)."

The district court relied on Revised Regulation Z to dismiss Cox's security interest claims. Revised Regulation Z expressly excludes "incidental interests" from the definition of security interests, see 12 C.F.R. § 226.2(a)(25) (1984), and the Federal Reserve Board's Official Staff Commentary indicates that an "incidental interest" includes a "[w]aiver of homestead or personal property rights," *see* 46 Fed.Reg. 50288, 50296 (Oct. 9, 1981).[7] Thus, creditors have no duty to disclose such a waiver and Cox could base neither her damages nor rescission claim on this nondisclosure. Similarly, the district court noted that for purposes of disclosure Revised Regulation Z also excludes "interests that arise solely by operation of law" from the definition of a security interest. *See* 12 C.F.R. § 226.2(a)(25) (1984). Since disclosing the possibility of mechanics' or materialmen's liens is not required,[8] this nondisclosure provided no support for either the damages or rescission claim.

## II.

There are three distinct errors in the district court's resolution of this case. Although any of these errors standing alone would require reversal, we believe that the interplay between the presimplification Act and the current version of the Act can be fully understood only through explaining each error.

*First.* Although the court determined that, by force of the stipulation, the

---

**4.** The district court referred to the presimplification Act as "TILA" and the current version of the Truth In Lending Act as "TILSRA" throughout its opinion.

**5.** The district court apparently overlooked the provision in the 1980 amendments which allowed creditors to comply with those amendments prior to their effective date. *See infra.*

**6.** *See* Truth In Lending Act, Pub.L. No. 90–321, § 115 (1968), *added by* Pub.L. No. 93–495, § 413(a), 88 Stat. 1500, 1520 (1974) (formerly 15

U.S.C. § 1614). The current version of the Act carries forward this provision. *See* 15 U.S.C. § 1641(a).

**7.** The commentary is reprinted in 12 C.F.R. Part 226, Supp. I (1984).

**8.** The staff commentary makes it clear that the phrase "interests that arise solely by operation of law" is a generic term which includes interests such as mechanics' and materialmen's liens. *See infra* note 10.

presimplification Act applied, it also held that the regulation interpreting the *current* version of the Act applies.[9] This necessarily leads to incongruous results.

Cox's claim that the disclosure statement inadequately disclosed the possibility of mechanics' and materialmen's liens provides an example of the confusion that can result from wedding the revised regulation to the presimplification Act. The presimplification Act required a "description of *any* security interest" and a "clear identification" of the subject property. *See* Truth in Lending Act, Pub.L. No. 90-321, § 128, 82 Stat. 146, 155 (1968) (formerly 15 U.S.C. § 1638(a)(10) (current version at 15 U.S.C. § 1638(a)(9)). The term "security interest" was not defined in the prior version of the Act, but the original Regulation Z defined the term to include "mechanic's, materialmen's, artisan's, and other similar liens." *See* Regulation Z § 226.2(gg). *See also Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir.1980). Although the current version of the Act still requires a disclosure of security interests, the requirement has been relaxed. A creditor need now disclose only,

> [w]here the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type.

*See* 15 U.S.C. § 1638(a)(9). The legislative history makes it clear that this language was intended to limit the type of security interests which are to be disclosed.

> When a security interest is being taken in property not purchased as part of the credit transaction, the Committee intends this provision to require a listing by item or type of property securing the transaction, but not a listing of related or incidental interests in the property. For ex-

ample, a loan secured by an automobile (not being purchased with the proceeds of the loan) would require a statement indicating that the loan is secured by an automobile but would not require a listing of incidental related rights which the creditor may have, such as insurance proceeds or unearned insurance premiums, rights arising under, or waived in accord with state law, accessions, accessories, or proceeds.

S.Rep. No. 73, 96th Cong., 2d Sess. 16, *reprinted in* 1980 U.S.Code Cong. & Ad. News 236, 280, 293-94.

The intent of Congress was to change the law to not require disclosure of "rights arising under ... state law," such as mechanics' and materialmen's liens. In accordance with the amendment, Revised Regulation Z expressly states that "an interest that arises solely by operation of law" does not have to be disclosed as a security interest. *See* 12 C.F.R. § 226.-2(a)(25) (1984); Official Staff Commentary, 46 Fed.Reg. 50288, 50296 (Oct. 9, 1981).[10] That Revised Regulation Z follows the intent of the amendments is not surprising. What would be surprising is if the revised regulation, promulgated to interpret an amendment which sought to change the law to remove the requirement that this type of security interest be disclosed, has any bearing on the presimplification Act's requirement that it be disclosed. In short, if the presimplification Act applies, so does Regulation Z; if the current version of the Act applies, Revised Regulation Z also applies.

■ *Second.* The conclusion that a creditor may select beneficial provisions from both Regulation Z and Revised Regulation Z—and in the absence of a stipulation such as the one in this case might apparently do the same with the former and current versions of the Act—is wrong. The notice

---

9. Revised Regulation Z clearly addresses the current version of the Act, not the presimplification Act. Revised Regulation Z "implements the Truth in Lending Simplification and Reform Act ... and substantially alters the requirements and the structure of the current regulation." *See* 46 Fed.Reg. 20848, 20848 (April 7, 1981).

10. The staff commentary, in discussing interests that arise solely by operation of law, states that "[e]xamples of such interests are mechanics' and materialmen's liens." *See* 46 Fed.Reg. at 50296.

accompanying the promulgation of Revised Regulation Z stated:

> Creditors may not, however, "mix and match" requirements from the current and the revised regulations in making the disclosures for a single transaction. For example, all the disclosures for a closed-end credit transaction must be made in accordance with the current regulation or all of them must be made in accordance with the revised regulation.

*See* 46 Fed.Reg. 20848, 20849 (April 7, 1981). Similarly, the Official Staff Commentary explains:

> In general, however, a creditor may not mix the regulatory requirements when making disclosures for a particular closed-end transaction or open-end account; all the disclosures for a single closed-end transaction (or open-end account) must be made in accordance with the previous regulation, or all the disclosures must be made in accordance with the revised regulation.

*See* 46 Fed.Reg. 50288, 50290 (Oct. 9, 1981).

The same is true of the statute itself. The Simplification Act contained the following provisions for its effective date.

> (a) except as provided in § 608(b), the amendments made by this title shall take effect upon the expiration of two years after the date of enactment of this title.
>
> . . . .
>
> (c) Notwithstanding subsections (a) and (b), any creditor may comply with the amendments made by this title in accordance with the regulations, forms and clauses supplied by the Board prior to such effective date. Any creditor who elects to comply with such amendments and any assignee of such a creditor shall be subject to the provisions of sections 130 and 131 of the Truth In Lending Act [15 U.S.C. §§ 1640, 1641], as amended by

sections 615 and 616, respectively, of this title.

Truth in Lending Simplification and Reform Act, Pub.L. No. 96–221, § 625, 94 Stat. 168, 185–86, *amended by* Pub.L. No. 97–25, § 301, 95 Stat. 144, 145 (1981).

The legislative intent behind these provisions on the effective date of the Simplification Act is fairly clear. The Senate Report states that "either all the provisions of the old act or all the provisions of the new act will be applicable for any single transaction." *See* S.Rep. No. 23, 97th Cong., 1st Sess. 5, *reprinted in* 1981 U.S.Code Cong. & Ad.News 74, 78.

Thus, a creditor may not comply in part with the old law and in part with the new law but must instead comply in full with either old or new law. *See Huff v. Stewart-Gwinn Furniture Co.*, 713 F.2d 67, 68 n. 1 (4th Cir.1983); *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 66 n. 1 (4th Cir.1983).[11]

*Third.* The district court erred in applying Revised Regulation Z not only because it is improper to wed the requirements of the revised regulation to the presimplification Act, but also because, even in the absence of the stipulation, the presimplification Act and the former Regulation Z would have applied to this transaction.

The Simplification Act does not clearly explain how a creditor is to exercise its option to comply with the 1980 amendments. The provision concerning the effective date quoted above merely states that a "creditor may comply" with the amendments prior to their effective date and that "any creditor who elects to comply" will be subject to the amended provisions on liability. *See* Pub.L. No. 96–221, § 625(c). The regulations, however, clarify the procedure. The notice accompanying the promulgation of Revised Regulation Z states that a "creditor may avail itself of the new

---

11. In *Mars* and its companion case, *Huff,* the Fourth Circuit held:

> Compliance with those amendments was optional with the creditors until October 1, 1982. During the transition period, as a general rule, all disclosures were to be made either in accordance with the previous regulation or in accordance with the revised regulation, but a creditor could not mix the regulatory requirements.

> *See* 713 F.2d at 66 n. 1.

tolerances only if it complies with the revised regulation." *See* 46 Fed.Reg. 20848, 20849 (April 7, 1981). Similarly, the Official Staff Commentary states that a "creditor is not required to take any particular action beyond the requirements of the revised regulation to indicate its conversion to the revised regulation." *See* 46 Fed. Reg. 50288, 50290 (Oct. 9, 1981). Thus, a creditor exercises his option to comply with the amendments by complying with the amendments.

■ The mere fact, however, that a creditor fails to make disclosures which were required by the presimplification Act but are not required by the current version of the Act does not indicate an election to comply with the latter. In addition to the instances of purported noncompliance with the presimplification Act, there are several instances in which the disclosure statement is facially deficient under the new Act. These variations between the instant disclosure statement and the requirements of the new Act reveal that Home Insulation and First National did not "elect" to comply with the Simplification Act.

■ The new Act requires that creditors use terminology somewhat different from that required in the former Act. For example, a creditor must now disclose the "total sale price, *using that term.*" *See* 15 U.S.C. § 1638(a)(7); 12 C.F.R. § 226.18(j) (1984) (emphasis added). This term was not used in the disclosure statement issued to Cox. The absence of this term is entirely consistent, however, with disclosure under the presimplification Act. Moreover, the amended Act, unlike the former Act, requires that "descriptive explanations" accompany the key terms, "amount financed," "finance charge," "annual percentage rate," "total of payments" and "total sale price." *See* 15 U.S.C. § 1638(a)(8). In a manner consistent with the presimplification Act and inconsistent with the current version of the Act, the disclosure statement does not contain these brief de-

scriptions. Additionally, the notice of the right to rescind stated that the creditor is required by law to take action to effect a rescission within ten days of its receipt of notice that the consumer is exercising its right to rescind. This disclosure correctly stated a creditor's obligations under the presimplification Act. *See* Truth in Lending Act, Pub.L. No. 90–321, § 125(b), 82 Stat. 146, 153 (1968), *amended by* Pub.L. No. 93–495, § 404, 88 Stat. 1500, 1517 (1974) (current version at 15 U.S.C. § 1635(b)). This statement is incorrect, however, under the amended Act. 15 U.S.C. § 1635(b) now gives a creditor *twenty days* to comply with a request for rescission.

The above examples are specific instances in which the disclosures deviated from the requirements of the amended Act. The disclosure statement as a whole reveals that it was made in attempted compliance with the presimplification Act, not the current Act.[12] Since a creditor must comply with the new law in order to "avail itself of the new tolerances," and since the present disclosure, considered as a whole, did not purport to comply with the new Act, First National's liability in this case is governed by the presimplification Act. Both because Revised Regulation Z does not implement the presimplification Act and because the disclosure did not purport to comply with Revised Regulation Z, the former version of Regulation Z similarly applies to this case.

### III.

First National argues that the district court's judgment is supported by *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). *Valencia* does not hold, however, that a creditor can mix and match provisions of old and new Truth in Lending law. It merely holds that Revised Regulation Z can, in certain narrow circumstances, be used to interpret the provisions of the presimplification Act

---

**12.** Indeed, the disclosure statement closely tracks the sequence of disclosures mandated by the former Regulation Z § 226.8(c).

even though the amended Act and Revised Regulation Z do not directly apply to a given disclosure. Although *Valencia* does not generally sanction the district court's application of Revised Regulation Z to this case, we do conclude that the *Valencia* analysis applies to one of Cox's claims.

The debtor in *Valencia* claimed that the creditor's right to unearned insurance premiums amounted to an undisclosed security interest. *See id.* at 208–09, 101 S.Ct. at 2268–69. The disclosure occurred prior to the enactment of the Simplification Act and it was therefore clear that the presimplification Act applied to the transaction. By the time the case reached the Supreme Court, however, the Act had been amended and Revised Regulation Z issued. The Court noted a nonfinal Federal Reserve Board interpretation which had determined that a creditor's right of this type is not a security interest under the Act. *See id.* at 212, 101 S.Ct. at 2270. Because the interpretation was never adopted as final, however, the Court did not rest its conclusion on that ground. *Id.* at 213, 101 S.Ct. at 2270. Rather, it concluded that the presimplification Act, interpreted in light of the amended Act and Revised Regulation Z, did not include such interests.

The Court's analysis proceeded as follows. The term "security interest" is defined in neither version of the Act. *Id.* at 214, 101 S.Ct. at 2271. Although the former Regulation Z did generally define the term "security interest," *see* Regulation Z § 226.2(gg), it did not refer specifically to the status of rights in unearned insurance premiums. Revised Regulation Z, however, specifically states that security interests do "not include incidental interest such as [an] interest in ... insurance proceeds." *See* 12 C.F.R. § 226.2(a)(25) (1984). The Court found that Revised Regulation Z and the reasoning behind it "applies to the TILA as well as to the 1980 Act," *see* 452 U.S. at 216, 101 S.Ct. at 2272, because the matter in issue was not specifically addressed in the presimplification Act, the amended Act, or the original Regulation Z.

The Court summarized its analysis as follows:

> The Board's revised regulation construes the statutory term "security interest" which appears undefined, in both the TILA and the 1980 Act; it also defines the term "security interest" appearing in the revised regulation. The same term had been used in the original Regulation Z, and it seems to us that the Board's definition of "security interest" in the revised regulation is persuasive authority as to whether an interest in unearned insurance premiums should be disclosed as a "security interest" under the unrevised regulation. As we see it, the term "security interest" as used in both the revised and unrevised versions of Regulation Z does not include an interest in unearned insurance premiums in a transaction such as this.

*Id.* at 216–17, 101 S.Ct. at 2272–73.

■ Thus, although this case is governed by the presimplification Act and Regulation Z, it is possible that Revised Regulation Z may be of use in interpreting the requirements of the former law. Specifically, Revised Regulation Z may be used as an interpretive aid when a particular disclosure is not addressed in either the presimplification Act or in the former Regulation Z and when the 1980 amendments do not change the requirements of the presimplification Act with respect to the disclosure in question.

■ Clearly, the *Valencia* analysis has no bearing on Cox's downpayment claim. Unlike the situation in *Valencia*, the presimplification Act *expressly* required the disclosure of a downpayment. *See* Truth in Lending Act, Pub.L. No. 90–321, § 128(a)(2), 82 Stat. 146, 155 (1968) (formerly 15 U.S.C. § 1638(a)(2)). It cannot be said, therefore, that the amended Act did not change the requirements of the presimplification Act in this respect and that the more particular requirements of Revised Regulation Z may be used to supplement

the general contours of the presimplification Act.[13]

The same is true of mechanics' and materialmen's liens. Although neither version of the Act defines the term "security interest," the former Regulation Z expressly provided that such liens are within the scope of required disclosures.[14] In *Valencia*, the Court could accurately state that "there is no indication that the definition [of the term "security interest"] was being changed with respect to unearned premiums." *See Valencia*, 452 U.S. at 214–15, 101 S.Ct. at 2271. This statement cannot be accurately made with respect to mechanics' and materialmen's liens. Regulation Z directly conflicts with Revised Regulation Z.[15] The former may not, therefore, be interpreted by refering to the latter. The presimplification Act and Regulation Z required disclosure of these liens[16] and nothing in *Valencia* changes this result.

■ We conclude, however, that the *Valencia* analysis does apply to waivers of homestead exemptions. These interests, like the interests in insurance premiums discussed in *Valencia*, were not expressly addressed in either Act or in the original Regulation Z. Revised Regulation Z, however, provides that "incidental" interests need not be disclosed. *See* 12 C.F.R. § 226.2(a)(25) (1984). The Official Staff Commentary makes it clear that "[i]ncidental interests in property that are not security interests include, among other things . . . [w]aiver of homestead or personal property rights." *See* 46 Fed.Reg. at 50296. Since both insurance proceeds and waivers of homestead exemptions come under the general rubric of "incidental interests," since neither the presimplification Act nor the former Regulation Z dealt specifically with waivers of homestead exemptions, and since there is no indication that the 1980 amendments changed the law regarding waivers of homestead exemptions, we conclude that waivers of homestead exemptions need not be disclosed under the presimplification Act, interpreted in light of *Valencia*.[17]

## IV.

Two issues yet remain. First National argues that two statutory provisions, each of which appears in both versions of the Act, insulate it from liability even if the disclosure was inadequate. We consider these in turn.

■ First, the bank relies on 15 U.S.C. § 1640(f), which continues substantially unchanged the presimplification Act's preclusion of liability for,

any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, not-

---

13. Congress clearly thought that it was changing the law as to downpayments. The Senate Report states that the "number of disclosures given the consumer would be reduced" and, more specifically, that "the bill would eliminate disclosure of the . . . 'down payment'." *See* S.Rep. No. 73, 96th Cong., 2d Sess. 3, *reprinted in* 1980 U.S.Code Cong. & Ad.News 280, 282.

14. "Security interest" and "security" means any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to . . . mechanic's, materialmen's, artisan's, and other similar liens . . . .
*See* Regulation Z § 226.2(gg).

15. The revised regulation clearly provides that mechanics' and materialmen's liens need not be disclosed. *See* 12 C.F.R. § 226.2(a)(25) (1984);

Official Staff Commentary, 46 Fed.Reg. at 50296.

16. A general discussion of this disclosure requirement is found in *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir.1980).

17. We recognize that there is authority for the proposition that waivers of homestead exemptions are security interests which must be disclosed under the presimplification Act. *See, e.g., Hamilton v. Southern Discount Co.*, 656 F.2d 150 (5th Cir.1981); *Elzea v. National Bank of Georgia*, 570 F.2d 1248 (5th Cir.1978). Because these cases were decided before *Valencia*, we decline to follow them.

withstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

*See* 15 U.S.C. § 1640(f); Truth in Lending Act, Pub.L. No. 90–321, § 130, 82 Stat. 146, 157 (1968), *added by* Pub.L. No. 93–495, § 406, 88 Stat. 1500, 1518 (1974), *amended by* Pub.L. No. 94–222, § 3(b), 90 Stat. 197, 197 (1976) (formerly 15 U.S.C. § 1640(f)).

This defense is available to a creditor only if he acts "in conformity" with certain official interpretations of the Truth in Lending Act. It does not protect a creditor who *fails* to conform with a regulation or interpretation through an honest, good faith mistake. In other words, § 1640(f) does not protect a creditor from its own mistaken interpretation of the law. *See Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1287 (7th Cir.1980), *reversed on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) ("[A] creditor's mistaken interpretation of Regulation Z, even if honest and reasonable, is not a defense under section 1640(f)."); *Kessler v. Associates Financial Services Co.,* 573 F.2d 577, 579 (9th Cir.1977) ("Section 1640(f) creates no good faith defense based on the creditor's honest and reasonable, but mistaken interpretation of the Regulation Z."); *Pearson v. Easy Living, Inc.,* 534 F.Supp. 884, 895 (S.D.Ohio 1981) ("honest and reasonable" misinterpretation of official pronouncement "is not a defense"). *But see Charles v. Krauss Co.,* 572 F.2d 544, 549 (5th Cir.1978).[18]

Although First National argues that § 1640(f) provides a "complete bar to recovery," it fails to identify with what "rule, regulation, or interpretation" it acted "in conformity." As the preceding discussion reveals, First National did *not* comply with Revised Regulation Z or any staff interpretation. It could have elected to comply with the amended Act and the revised regulation, but nothing in Revised Regulation Z gave it the authority to select congenial provisions of the new law for use with other provisions from the presimplification law. The defense that First National seeks to assert is that it made an honest mistake in determining the applicability of Revised Regulation Z. This is legally insufficient under § 1640(f).

▮ Second, First National argues that since it is an assignee, it is not liable for damages for the failure to disclose the downpayment because assignees are liable only for violations which are "apparent on the face" of the relevant document. *See* 15 U.S.C. § 1641(a); Truth in Lending Act, Pub.L. No. 90–321, § 115 (1968), *added by* Pub.L. No. 93–495, § 413(a), 88 Stat. 1500, 1520 (1974) (formerly 15 U.S.C. § 1614). The district court found that the failure to disclose the downpayment was not apparent on the face of the disclosure statement and Cox concedes that this is correct. She relies, however, on a provision of the contract to overcome this defense. The contract provided:

Notice: Any holder of this consumer credit contract is subject to all claims and defenses which the Debtor could assert against the Seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the Debtor shall not exceed the amounts paid by the Debtor hereunder.

Cox argues that this provision allows her to assert her downpayment claim against First National because she could have asserted it against Home Insulation.

First National does not respond to this argument on the merits, but rather argues that Cox did not raise this argument below. This is incorrect. Cox clearly and unam-

---

**18.** In *Krauss,* the creditor relied on an official interpretation which the court construed narrowly to avoid finding it invalid. Under this narrow construction, the creditor did not comply with the interpretation, even though it had complied with "the literal language of the only directive clause" in the interpretation. *See* 572 F.2d at 549. In this circumstance, which "amount[ed] to a judicial determination that the exception's literal terms are invalid," *see id.,* the court allowed the creditor to maintain a § 1640(f) defense even though it had failed to act "in conformity" with the interpretation, properly construed.

biguously raised this argument and quoted the relevant language from the contract in her Reply Memorandum in support of her motion for summary judgment. The district court failed to address this argument. Since First National has not briefed this issue on the merits and since this case must be remanded to the district court, we will allow the district court to determine the effect of this contractual language upon First National as an assignee in the first instance.

### V.

In conclusion, this case is remanded to the district court to apply the presimplification Act and Regulation Z to Cox's downpayment and mechanics' and materialmen's liens claims. Under *Valencia*, Cox may obtain no relief on her claim regarding the waiver of her homestead exemption. Accordingly, this case is AFFIRMED in part, REVERSED in part and REMANDED for proceedings consistent with this opinion.