**June McCOY, Plaintiff-Appellant,**

v.

**HARRIMAN UTILITY BOARD and Thornton Heating and Air Conditioning, Defendants-Appellees.**

No. 85–5443.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1986.

Decided May 12, 1986.

Carol S. Nickle (argued), Knoxville, Tenn., Lenny L. Croce, Rural Legal Servic-es of Tennessee, Inc., Oak Ridge, Tenn., for plaintiff-appellant.

William A. Newcomb, Harriman, Tenn., for defendant-appellee.

Patricia D. Murphy (argued), Stephen C. Daves (argued), Knoxville, Tenn., for Harriman Utility Bd.

Before KRUPANSKY and GUY, Circuit Judges, and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Plaintiff June McCoy appealed the summary judgment for defendants in this action alleging violation of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667(e). Defendant Harriman Utility Board (HUB) operated a heat pump financing plan in conjunction with the Tennessee Valley Authority (TVA) designed to enable consumers to procure energy-efficient heat pumps should they so desire. Plaintiff on June 30, 1981 after discussions with HUB entered into a written agreement with HUB to participate in the heat pump financing program, which agreement identified the interest rate, term, and pertinent conditions of a loan to be executed between plaintiff and HUB upon installation of acceptable equipment.[1] Plaintiff was instructed to obtain an estimate from a contractor of her choice selected from a TVA-approved list. Plaintiff selected defendant Thornton Heating and Air Conditioning as the contractor from whom she would purchase the heat pump. Thornton submitted a cost estimate for the selected installation which was approved by HUB. Upon completion of the installation it provided HUB and plaintiff with a work completion certificate. Pursuant to the agreement between plaintiff and HUB, the cost of the installation was paid by HUB.

Contemporaneously with the payment of the purchase price, plaintiff executed a financing agreement with HUB incorporating all of the terms and conditions initially agreed upon between plaintiff and HUB in

---

1. June McCoy was previously known as June Kirby, the wife of L.A. Kirby, who executed all of the pertinent documents relative to the trans-action. McCoy subsequently divorced and, pursuant to the divorce decree, was awarded the real property and house.

June of 1981. The repayment agreement provided that plaintiff would pay any outstanding balance of the note to HUB at such time as she sold her house. The agreement also incorporated an acceleration clause whereby HUB could, in the event that any installment had not been paid within 60 days of the due date, declare the entire amount of the outstanding balance immediately due.

Plaintiff discontinued payments to HUB when the heat pump malfunctioned in mid-1983. In May of 1984, within three years after the execution of the loan documents, plaintiff noticed HUB and Thornton that she rescinded her financing agreement with HUB. On August 13, 1984, plaintiff filed a complaint in federal district court seeking rescission of the financing agreement with HUB, declaratory relief, damages, and statutory penalties for violation of TILA and the Tennessee Retail Installment Sales Act. Plaintiff contended that the heat pump financing arrangement constituted a single consumer credit transaction in which HUB was required to disclose any and all actual or contingent security interests that could arise as a result of the transaction. Plaintiff asserted that the loan documents failed to disclose a purported security interest in favor of HUB in the plaintiff's homestead exemption and a contingent security interest in favor of Thornton in the form of a mechanic's or materialman's lien, which failures extended her a right to rescind her contract with HUB up to three years after its execution pursuant to 15 U.S.C. § 1635. The district court granted summary judgment in favor of defendants.

Section 1635 of Title 15 sets out the pertinent provisions regarding an obligor's right of rescission as to certain credit transactions:

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence· of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor

without obligation on his part to pay for it.

\* \* \* \* \* \*

(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the disclosures required under this section or any other material disclosures required under this part have not been delivered to the obligor.

15 U.S.C. § 1635(a), (b) & (f).[2]

■ At the outset this court concludes that defendant Thornton's argument invoking the one year statute of limitations of 15 U.S.C. § 1640(e) of TILA to foreclose plaintiff's suit is misplaced.[3] Section 1640(e) bars only plaintiff's suit for damages under TILA, and not her asserted cause of action for rescission pursuant to 15 U.S.C. § 1635. Under § 1635, if the defined disclosures are made, the obligor has three days to rescind a credit transaction; if defined disclosures are not made, the obligor has a right to rescind up to three years after consummation of the transaction pursuant to 15 U.S.C. § 1635(f). *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246–48 (6th Cir.1980); *Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133, 1136 (10th Cir.1974). Thus, a debtor may possess a right to rescind even though his claim for damages is barred by the statute of limitations in 15 U.S.C. § 1640(e). *Rudisell*, 622 F.2d at 248. *See generally* Annot., 36 A.L.R. Fed. 657 (1978 & Supp.1985). Plaintiff mailed her notice of rescission to HUB on May 3, 1984, within three years of all relevant dates. Accordingly, defendant's assertion is without merit.

Plaintiff on appeal argued that her continuing right to rescind ran against HUB inasmuch as both HUB and Thornton, as a result of their interrelationship, qualified as creditors to the loan transaction. Thus, a security interest which ran in favor of *either* HUB or Thornton was properly required to be disclosed under TILA and non-disclosure of such interest constituted a basis for her rescission of the agreement with HUB. The district court concluded that although HUB was a creditor for the purposes of TILA, Thornton was not such a creditor.

TILA provides that "[e]ach creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this Part or Part D of this subchapter." 15 U.S.C. § 1631(a). TILA defines the term

**2.** TILA was amended in 1980 by the Truth in Lending Simplification and Reform Act. The former act is often characterized as the Presimplification Act or TILA, whereas the 1980 Act is often known as TILSRA. TILSRA became effective October 1, 1982. Congress provided that during the interim between the 1980 amendments and the October 1982 effective date creditors could comply with either version of the Act. *See* TILSRA, Pub.L. No. 96–221, § 625, 94 Stat. 168, 185–86, *amended by* Pub.L. No. 97–25, § 301, 95 Stat. 144, 145 (1981). The transactions scrutinized in the instant matter occurred during the interim period. The Sixth Circuit in *Cox v. First National Bank of Cincinnati*, 751 F.2d 815, 821–22 (6th Cir.1985), interpreted the legislative provision to provide that a creditor elects to comply with one or the other versions by actually complying with one or the other. The *Cox* court also clarified that, should the creditor choose to comply with the former Act in this period, his conduct is subject to the former interpretive regulations (original Regulation Z) rather than new ones (Revised Regula-

tion Z), and a creditor cannot "mix and match" favorable regulations from both versions. *Id.* The district court below in the case sub judice recognized the issue and concluded: "The parties have made only passing mention of which Act applies, and have not supplied the Court with information to determine with which Act defendants attempted to comply. Therefore, the Court assumes that the Presimplification Act applies." *J.App.* 86 n. 3. The statutory and regulatory provisions cited above derive, accordingly, from the Presimplification Act and original Regulation Z, except as noted.

**3.** Section 1640 of Title 15 provides generally for civil liability for TILA violations and specifically sanctions the maintenance of individual and class actions for damages subject to certain limitations set out therein. Subsection (e) thereof provides: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

"creditor" as referring "only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise." 15 U.S.C. § 1602(f). "Arrange for the extension of credit" means to provide or to offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service, or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit. 12 C.F.R. § 226.2(h).

This court is in agreement with plaintiff and the district court that defendant HUB was a "creditor" under TILA because it regularly extended credit in installment transactions or for which a finance charge was imposed. However, plaintiff's position that defendant Thornton was so closely connected to defendant HUB that Thornton qualified as an "arranger of credit" and thus a "creditor" subject to TILA's disclosure requirements is unsound. The instant facts did not disclose the existence of a financing arrangement between Thornton and plaintiff or a relationship between HUB and Thornton reflective of any of the factors enumerated in § 226.2(h), discussed above, namely that Thornton offered to provide or arrange consumer credit to plaintiff through HUB for a fee or that Thornton had knowledge of the credit terms or participated in the preparation of the loan documents necessary to the extension of credit. Indeed, the record manifested that plaintiff, at the time of her agreement to participate in the heat pump fi-

nance program, negotiated and agreed to all of the essential terms of the loan agreement exclusively with HUB, namely the interest rate, the term of the loan, and the repayment schedule, *prior to* selecting a contractor of her choice to supply and install a heat pump. Thornton had no direct or indirect participation in the negotiations for the loan extended by HUB. Thornton was paid in a single payment at the time installation was completed and extended no credit to plaintiff. As such, the case law relied upon by plaintiff is clearly distinguishable. *See, e.g., Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 515 (5th Cir.1976) (automobile dealer who did not ordinarily finance credit sales itself was arranger of credit for purposes of TILA where when consumer had not made financing arrangement of own it distributed financial statement to lenders with which it regularly dealt and immediately assigned commercial paper to approving lenders), *cert. denied,* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977). *See generally* Annot., 28 A.L.R. Fed. 548 (1976 & Supp.1985). Accordingly, inasmuch as the district court correctly concluded that defendant Thornton was not a "creditor" subject to the mandatory disclosure provisions of TILA, the lower court's grant of summary judgment in favor of Thornton was appropriate.

Plaintiff argued further that HUB failed to disclose the contingency of a mechanic's lien which could have attached to her real property in favor of defendant Thornton. The parties did not dispute that such notice was not given nor that the transaction could have given rise to such a lien. The Presimplification regulations included within the definition of "security interest" a lien on property arising by operation of law, and specifically a mechanic's or materialman's lien. *See* 12 C.F.R. § 226.2(gg).[4] Relying upon this circuit's

---

**4.** 12 C.F.R. § 226.2(gg) had provided:

"Security Interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other

consensual or confessed liens whether or not recorded, mechanic's materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used

decision in *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir.1980), the district court concluded that the contingent security interest did not run in favor of a *creditor,* and thus disclosure was unnecessary and no right to rescind the transaction arose by virtue of HUB's nondisclosure, because Thornton was not a creditor for purposes of TILA.

In *Rudisell,* plaintiff consumers had contracted for installation of aluminum siding with a contractor. The contractor suggested financing through its bank, but plaintiffs preferred a bank they patronized locally. The contractor solicited the defendant bank, which had been identified and selected by plaintiffs to consider the loan necessary to finance the installation of the aluminum siding. The bank thereafter agreed to extend credit for the transaction to plaintiffs. Plaintiffs executed a promissory note payable directly to the contractor; the contractor thereafter assigned the note to the bank and received payment on the same day. Plaintiffs later became dissatisfied and rescinded their contract for installation of aluminum siding and the financing agreement approximately a year later. *Id.* at 245. Plaintiffs filed suit alleging numerous TILA disclosure violations, asserting more specifically that the contractor's contingent right to file a mechanic's lien against plaintiff's property under Ohio law constituted a security interest arising by operation of law, and that, inasmuch as the contingent lien was not disclosed, plaintiffs had a continuing right to rescind beyond the three day period otherwise statutorily provided for under circumstances where full disclosures have been furnished. *Id.* at 245, 248.

The *Rudisell* court held that a nonasserted and unrecorded mechanic's lien was within the definition of a security interest despite the fact that it was not created by the financing documents. *Id.* at 248–49. Accordingly, the court concluded the "possibility of a mechanic's lien is a security interest which must be disclosed even though the mechanic's lien may never be actually taken." *Id.* at 251 (citations omitted). The *Rudisell* court also found that the mechanic's lien had not been adequately disclosed by the creditor. *Id.* at 252. The court rejected the lender's argument that it was not required to disclose the contingency of a mechanic's lien because the lien would run in favor of the *contractor* and not in favor of the lender. The *Rudisell* court concluded that the home improvement contractor was an "arranger of credit" within TILA based on the contractor's critical role in arranging the loan to the plaintiffs and emphasized that the mechanic's lien therefore did run in favor of a *creditor. Id. Rudisell* explained further:

> Had appellee [the bank] loaned the money directly to appellants [plaintiffs], and appellants then used the money for a cash sale from A.W.D. [the contractor], clearly A.W.D. would not have arranged or extended credit and would not have been a creditor. As Fifth Third Bank would have been the only creditor, a mechanic's lien, which would run in favor of A.W.D. and not Fifth Third, would not have run in favor of a *creditor.* There would have been no security interest in favor of a creditor to be disclosed and no right to rescind. *See* FRB Letter No. 1236, Sept. 2, 1977 [1974–1977 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 31,-675; FC–0007, Official Staff Interpreta-

---

to secure payment or performance of an obligation.

Revised Regulation Z addresses "security interests" that arise solely by operation of law in certain contexts:

(25) "Security Interest" means an interest in property that secures performance of a consumer credit obligation and that is recognized by State or Federal law. It does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, in-

surance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after-acquired property. For purposes of disclosure under §§ 226.6 and 226.18, the term does not include an interest that arises solely by operation of law. However, for purposes of the right of rescission under §§ 226.15 and 226.23, the term does include interests that arise solely by operation of law.

12 C.F.R. § 226.2(a)(25).

tion, Sept. 30, 1976 (12 C.F.R. Parts 20–299, at 595 (1979)); FRB Letter No. 178 (Nov. 18, 1969), [1969–1974 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 30,-213; FRB Letter of July 16, 1969, [1969–1974 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 30,096.

*Id.* at 252–53 (emphasis in original).

The *Rudisell* court's language is persuasive in the resolution of the instant matter. Inasmuch as defendant Thornton did not qualify as an "arranger of credit" on this record, any contingent mechanic's or materialman's liens that could have attached to plaintiff's residence by operation of law would not have run in favor of a creditor and therefore were not subject to disclosure under TILA. Accordingly, the district court was correct in concluding that HUB's nondisclosure of the contingent mechanic's lien in favor of Thornton did not extend to plaintiff a right to rescind her loan agreement with HUB within the maximum three year period permitted by 15 U.S.C. § 1635(f).

■ Plaintiff next posits that the loan documents failed to disclose an "assignment of homestead exemption."[5] Assuming without deciding that the instant transaction did in fact implicate such a security interest, which is not clear, this court is of the opinion that the district court correctly relied on *Cox v. First National Bank of Cincinnati*, 751 F.2d 815 (6th Cir.1985). In *Cox*, this circuit drew on the Supreme Court's reasoning in *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), in holding that incidental interests in property such as waivers of homestead exemptions need not be disclosed by creditors under TILA:

We conclude, however, that the *Valencia* analysis does apply to waivers of homestead exemptions. These interests, like the interests in insurance premiums discussed in *Valencia*, were not expressly addressed in either Act or in the original Regulation Z. Revised Regulation Z, however, provides that "incidental" interests need not be disclosed. *See* 12 C.F.R. § 226.2(a)(25)(1984). The Official Staff Commentary makes it clear that "[i]ncidental interests in property that are not security interests include, among other things ... [w]aiver of homestead or personal property rights." *See* 46 Fed.Reg. at 50296. Since both insurance proceeds and waivers of homestead exemptions come under the general rubric of "incidental interests," since neither the presimplification Act nor the former Regulation Z dealt specifically with waivers of homestead exemptions, and since there is no indication that the 1980 amendments changed the law regarding waivers of homestead exemptions, we conclude that waivers of homestead exemptions need not be disclosed under the presimplification Act, interpreted in light of *Valencia*.

*Id.* (footnote omitted). This court finds *Cox* dispositive of plaintiff's contention in the case *sub judice*.[6]

Based on the foregoing, the judgment of the district court granting summary judgment in favor of defendants and dismissing plaintiff's action is AFFIRMED.

---

**5.** Apparently, plaintiff views the contract as within the ambit of Tenn.Code Ann. § 26–2–301(c), which provides:

(c) The homestead exemption shall not operate against public taxes nor shall it operate against debts contracted for the purchase money of such homestead or improvements thereon nor shall it operate against any debt secured by the homestead when said exemption has been waived by written contract.

**6.** Plaintiff on brief also suggested that the loan documents created a purchase money security interest (PMSI) in favor of HUB, citing Tenn. Code Ann. § 47–9–107(b). This suggestion is not only apparently made for the first time on appeal, but examination of the language of the financing agreement discloses that plaintiff's position is simply factually inaccurate since no PMSI was granted thereby.