946 F.2d 85
 60 USLW 2250
 SENTINEL FEDERAL SAVINGS AND LOAN ASSOCIATION OF KANSAS
CITY, MISSOURI, Petitioner,
v.
OFFICE OF THRIFT SUPERVISION, f/k/a Federal Home Loan Bank
Board; and, Tim Ryan, Director of the Office of
Thrift Supervision, Respondents.
 No. 90-2081.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 13, 1991.
Decided Oct. 3, 1991.
 
 Kent Snapp, Kansas City, Mo., argued, for petitioner, Kent Snapp and Karren M. Prasifka, Kansas City, Mo., on the brief.
 Richard L. Rennert, Washington, D.C., argued, for respondents, Harris Weinstein, Thomas J. Segal, Elizabeth Moore and Richard L. Rennert, Washington, D.C., on the brief.
 Before FAGG and LOKEN, Circuit Judges, and SNEED,* Senior Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 The primary issue on this appeal is whether Sentinel Federal Savings & Loan Association violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (TILA), by making discounted variable rate loans without disclosing a "composite annual percentage rate" as required by a Federal Reserve Board (FRB) Official Staff Commentary. Concluding that this disclosure was mandatory, the Office of Thrift Supervision (OTS) ordered Sentinel to cease and desist and to pay borrowers $196,845 as a restitution remedy. Sentinel seeks judicial review, arguing that it made all the disclosures expressly required by the statute and Regulation Z. We affirm.
 
 I.
 
 2
 The case comes to us with a bare record. Sentinel is a federally chartered savings and loan association with its principal place of business in Kansas City, Missouri. OTS[1] commenced this enforcement proceeding in December 1988, claiming that Sentinel issued 225 discounted variable rate loans between December 30, 1985 and June 5, 1987 without making the disclosure required by the Official Staff Commentary to 12 C.F.R. § 226.18(f). A "variable rate" loan is one in which different interest rates apply to different periods of time or to different portions of the principal balance. The differing rates are typically based upon an index or formula, such as two percent over the six-month Treasury bill rate. See 12 C.F.R. Part 226, Supp. I, § 226.22(a), p 4 (1985-1988). In a discounted variable rate loan, the creditor sets a low "teaser" interest rate for the initial period of a long term loan; the index or formula is then used to establish the interest rate after this initial period. See id. at § 226.18, p 18(f)(8).
 
 
 3
 Sentinel answered the agency's complaint, alleging that its disclosures complied with the literal terms of the statute and with the relevant provisions of Regulation Z, 12 C.F.R. §§ 226.18(f) and 226.22(a), and that the additional composite annual rate disclosure mandated by the Official Staff Commentary was contrary to law. After limited initial discovery, the Administrative Law Judge conducted a prehearing conference intended to clarify the issues. At the end of that conference, following a lengthy colloquy, counsel agreed to enter into a stipulation in open court, which provided in relevant part:
 
 
 4
 MS. FLEMING (Counsel for OTS): Sentinel granted 225 discounted variable-rate loans between December 30, 1985 and June 5, 1987. Would you stipulate to that?
 
 
 5
 MR. SNAPP (Counsel for Sentinel): We agree.
 
 
 6
 MS. FLEMING: No. 2: Sentinel did not use a composite annual rate method for computing the annual percentage rate disclosed on any of the 225 discounted variable-rate loans it granted....
 
 
 7
 MR. SNAPP: ... we agree to that.
 
 
 8
 * * * * * *
 
 
 9
 MS. FLEMING: If Sentinel Federal violated the Truth in Lending Act or Regulation Z in not disclosing a composite annual percentage rate on 225 discounted variable-rate loans ... the total amount of $201,076.45, or the total amount of $196,845, should be paid to Sentinel Federal's customers, as listed on Exhibit A....
 
 
 10
 MR. SNAPP: We agree to that, Your Honor.
 
 
 11
 On April 27, 1989, the Administrative Law Judge entered an order reciting the terms of the above stipulation and denying Sentinel's request for an evidentiary hearing on the ground that, because of the stipulation, the proceeding involved only a disputed question of law: whether Sentinel was legally required to obey the Official Staff Commentary. Sentinel then submitted an affidavit asserting that its discounted variable rate loan documents had disclosed both the initial annual percentage rate calculated according to the statutory annual percentage rate formula set forth in 15 U.S.C. § 1606(a)(1)(A), and the categories of information expressly required by Regulation Z, namely, the circumstances under which that initial rate might increase, any limitations on the increase, the effect of the increase, and an example of the payment terms that would result from an increase. See 12 C.F.R. § 226.18(f)(1).
 
 
 12
 Despite this evidence that Sentinel attempted to explain its discounted variable interest rate terms to borrowers, the ALJ ruled that Sentinel violated TILA because it did not make the disclosure specified in the Official Staff Commentary, which calls for a rate disclosure reflecting "a composite annual percentage rate based on the initial rate for so long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation." 12 C.F.R. Part 226, Supp. I, § 226.18, p 18(f)(8) (1985-1988). On June 25, 1990, the OTS issued its final Cease and Desist Order adopting the ALJ's recommended decision and setting the amount of restitution to be paid at $196,845. This appeal followed.
 
 II.
 
 13
 TILA is intended to promote the informed use of consumer credit by assuring meaningful disclosure of credit terms. See 15 U.S.C. § 1601(a); Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559, 100 S.Ct. 790, 793-94, 63 L.Ed.2d 22 (1980). The "annual percentage rate" is one of the most important required disclosures because it requires lenders to express uniformly the cost of a credit transaction (interest) as an annual rate. Reflecting the importance of this disclosure, TILA provides that the annual percentage rate "shall be disclosed more conspicuously than other terms," 15 U.S.C. § 1632(a).
 
 
 14
 The statute also contains a detailed definition of the annual percentage rate:
 
 
 15
 (a) The annual percentage rate applicable to any extension of consumer credit shall be determined, in accordance with the regulations of the [Federal Reserve] Board,
 
 
 16
 (1) in the case of any extension of credit other than under an open end credit plan, as
 
 
 17
 (A) that nominal annual percentage rate which will yield a sum equal to the amount of the finance charge when it is applied to the unpaid balances of the amount financed, calculated according to the actuarial method of allocating payments made on a debt between the amount financed and the amount of the finance charge, pursuant to which a payment is applied first to the accumulated finance charge and the balance is applied to the unpaid amount financed....
 
 
 18
 15 U.S.C. § 1606(a). This is the statutory formula. It is written in the context of a loan that has a single, uniform interest rate. The statute contains no explanation of how this disclosure should be made in the case of a variable rate loan. In this case, it is conceded that Sentinel disclosed its initial or "teaser" rate as an annual percentage rate computed in accordance with this formula.
 
 
 19
 Section 1606(a) expressly authorizes the FRB to adopt regulations defining how the annual percentage rate shall be determined. In addition, Congress in TILA generally authorized the FRB to promulgate regulations that "provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of [TILA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. § 1604(a). Based on this authority, FRB addressed the issue of variable rate loans in Regulation Z, but only in general terms:
 
 
 20
 [12 C.F.R.] § 226.18 Content of disclosures.
 
 
 21
 For each transaction, the creditor shall disclose the following information as applicable:
 
 
 22
 * * * * * *
 
 
 23
 (e) Annual percentage rate. The "annual percentage rate," using that term, and a brief description such as "the cost of your credit as a yearly rate."
 
 
 24
 (f) Variable rate. (1) If the annual percentage rate may increase after consummation ... the following disclosures:
 
 
 25
 (i) The circumstances under which the rate may increase.
 
 
 26
 (ii) Any limitations on the increase.
 
 
 27
 (iii) The effect of an increase.
 
 
 28
 (iv) An example of the payment terms that would result from an increase.
 
 
 29
 (Footnote omitted.) Although copies of its loan documents are not part of the administrative record, we accept for purposes of this appeal Sentinel's affidavit alleging that it made the disclosures required by this regulation.
 
 
 30
 The Official Staff Commentary "is the vehicle by which the staff of the [FRB] issues official staff interpretations of Regulation Z." 12 C.F.R. Part 226, Supp. I, p 1. In interpreting § 226.18 of Regulation Z, FRB has adopted by Commentary the more specific composite annual rate disclosure requirement for discounted variable rate loans that is at issue in this case:
 
 
 31
 8. DISCOUNTED VARIABLE-RATE TRANSACTIONS. In some variable-rate transactions, creditors may set an initial interest rate that is not determined by the index or formula used to make later interest rate adjustments. Typically, this initial rate charged to consumers is lower than the rate would be if it were calculated using the index or formula.... When creditors use an initial interest rate that is not calculated using the index or formula for later rate adjustments, the disclosures should reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation.
 
 
 32
 12 C.F.R. Part 226, Supp. I, p 18(f)(8) (1984). Sentinel argues on appeal, as it did before the agency, that it cannot be required to make this composite annual percentage rate disclosure because the Commentary expands and changes the specific annual percentage rate disclosures prescribed in the statute and Regulation Z.
 
 
 33
 It is true that, with most statutes, the enforcing agency may not expand the scope of a statutory command through interpretive pronouncements. On the other hand, Congress has broad (though not unlimited) power to delegate interpretive authority to an administrative agency. With respect to TILA, it is well settled that Congress "delegated expansive authority to [FRB] to elaborate and expand the legal framework governing commerce in credit." Milhollin, 444 U.S. at 559-60, 100 S.Ct. at 793-94. Moreover, the Supreme Court has recognized that the complexity and variety of consumer credit transactions make it impractical for FRB to deal explicity with every credit disclosure issue by regulation. Therefore, absent a clear expression in the statute or regulations, "it is appropriate to defer to the [FRB] and staff in determining what resolution of [a disclosure] issue is implied by the truth-in-lending enactments." Id. at 560, 100 S.Ct. at 794. "Unless demonstrably irrational, [FRB] staff opinions construing the Act or Regulation [Z] should be dispositive ...," Id. at 565, 100 S.Ct. at 797 (emphasis added). See also Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219, 101 S.Ct. 2266, 2273-74, 68 L.Ed.2d 783 (1981) ("[A]bsent some obvious repugnance to the statute, the Board's regulation implementing this legislation should be accepted by the courts, as should the Board's interpretation of its own regulation.").
 
 
 34
 These Supreme Court cases make it abundantly clear that Sentinel's attack on the validity of the Official Staff Commentary must fail unless Sentinel can show that the composite annual percentage rate disclosure requirement was "demonstrably irrational." See Hardison v. General Fin. Corp., 738 F.2d 893, 896 (7th Cir.1984). Toward that end, Sentinel argues that the composite rate is a misleading disclosure because the index upon which future interest rate adjustments are in fact based varies daily, whereas the Commentary's composite rate assumes that the index remains static.
 
 
 35
 It is true that the Commentary's composite rate is based upon an assumption of what future interest rates will be under the index formula. But the question is whether that composite rate is nonetheless a "meaningful disclosure of credit terms" consistent with the purpose of TILA. This case demonstrates the virtue of the Commentary's methodology. Sentinel disclosed only the artificially low teaser rate as the annual percentage rate for the loan, whereas under the Commentary it would have disclosed a higher annual percentage rate based upon an estimate of the inevitable future rate increases under the index formula. Clearly, the Commentary's calculation, though imprecise, is more accurate over the life of the loan than the rate disclosed by Sentinel. Thus, the Commentary's requirement is consistent with the statute's purposes and can hardly be deemed "demonstrably irrational."
 
 
 36
 Another example demonstrates that the Commentary is reasonable in requiring the lender to build an assumption as to future indexed rates into its annual percentage rate disclosure. Assume two discounted variable rate loans with teaser rates of seven percent; for later periods, one uses a margin of two percent over an index and the other a margin of five percent over the same index. The Commentary's composite annual percentage rate would disclose the significant difference in interest payments required over the life of the two loans. Sentinel's method of disclosure, on the other hand, would misleadingly reveal no difference. Accordingly, we conclude that the Official Staff Commentary is a rational, permissible interpretation of the statute and Regulation Z. There can be no question that Sentinel had adequate notice of this Commentary and its official status under TILA. See, e.g., 12 U.S.C. Part 226, Supp. I, p 1. Sentinel's mistaken belief that it could ignore the Commentary and rely upon its supposed compliance with the more general mandates of Regulation Z does not entitle it to the statutory good faith defense found in 15 U.S.C. § 1640(f). See Hendley v. Cameron-Brown Co., 840 F.2d 831, 834 (11th Cir.1988); Cox v. First Nat. Bank of Cincinnati, 751 F.2d 815, 824-25 (6th Cir.1985). Therefore, the cease and desist order must be affirmed.
 
 III.
 
 37
 Sentinel also argues that OTS exceeded its authority by ordering restitution. The statute expressly authorizes OTS "to require the creditor to make an adjustment to the account of the person to whom credit was extended, to assure that such person will not be required to pay a finance charge in excess of the finance charge actually disclosed...." 15 U.S.C. § 1607(e). Notwithstanding this express restitution authority in the statute, Sentinel contends that OTS erred in ordering restitution based solely upon Sentinel's failure to comply with an Official Staff Commentary.
 
 
 38
 We are troubled by those portions of the OTS decision suggesting that the statute requires that restitution be ordered for this type of disclosure violation. Restitution is an equitable remedy. We have said before, and repeat again, that an agency must "fully articulate its findings and conclusions that justify such a remedy" for a TILA violation. Citizens State Bank of Marshfield v. Federal Dep. Ins. Corp., 718 F.2d 1440, 1446 (8th Cir.1983).
 
 
 39
 In this case, however, Sentinel unequivocally stipulated to the restitution remedy "if Sentinel Federal violated the Truth in Lending Act or Regulation Z in not disclosing a composite annual percentage rate," a stipulation later entered without challenge in the ALJ's order of April 27, 1989. This stipulation justified the ALJ's decision that no evidentiary hearing was required and forecloses Sentinel from attacking the appropriateness of the restitution remedy on appeal.
 
 
 40
 Accordingly, we affirm.
 
 
 
 *
 The HONORABLE JOSEPH T. SNEED, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 References to OTS include its predecessor agency, the Federal Home Loan Bank Board. OTS replaced the FHLBB as the primary federal regulator of savings and loan associations with the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183